### Plant *against* McEwen.

Where *A.* received of *B* a note, and agreed to indorse it on another note in favour of *C.*, it was held, in a suit against *A*, that proof of such act and agreement alone, did not conduce to prove, that *A.*, in such transaction, was the authorized agent of *C.*

Though as a general rule, the declarations and acts of the party on record, whether he had, or had not, an interest in the subject, at the time of making and performing them, are admissible in evidence against him ; and though this rule may have no exception, where such declarations and acts affect the party personally, or others who derive their property through him, or who have confided their interests to his care; yet where a suit was brought against an executor, on his probate bond, it was held, that his declarations and acts, made and performed before he was executor, were inadmissible against him, as the judgment would affect the interests of the creditors and heirs of the testator, in relation to whom the executor was a stranger.

This was an action on a bond, given to the predecessor of the plaintiff in the office of judge of probate, by the defendant, as executor of the last will and testament of *Abijah McEwen,* deceased, conditioned for the faithful performance of his trust. The plea, after praying oyer of the bond and the condition, set them forth, and averred performance. The replication assigned as a breach, (among other things) "that the said *Abijah,* in his life-time, assigned to *William Cairnes* and *Victory Wetmore,* administrators of the estate of *Robert Walker,* deceased, a certain note from one *William Walker* to said *Abijah,* and by him warranted to be due and owing from said *William Walker,* at the time of such assignment ; whereas the defendant, during the life-time of the said *Abijah,* while he held said note against said *William Walker,* and before the assignment thereof to the said *Cairnes* and *Wetmore,* had, as agent of the said *Abijah,* received of the said *William, Walker* a certain note payable by one *Isaac Hawley* to the

said *William Walker*; which last-mentioned note he, the defendant, in the life-time of said *Abijah*, as his agent, agreed to indorse on the first-mentioned note, but never did so indorse the same; and that the estate of said *Abijah* in the hands of his executor, was liable for the same, and that the defendant, by reason thereof, as executor of the last will and testament of the said *Abijah*, became liable to pay to the said *Cairnes*, as surviving administrator of the estate of said *Robert Walker*, the amount of the said note from said *Hawley* to the said *William Walker.*" This part of the replication was traversed, by the defendant; on which issue was joined.

The cause was tried at *Fairfield, December* term, 1822, before *Chapman*, J.

On the trial, the plaintiff offered to prove, in order to shew the authority and agency of *Charles McEwen*, the defendant, that he received the note against *Hawley* mentioned in the replication, and agreed to indorse it on the note in favour of *Abijah McEwen*, against *William Walker*. To the admission of this evidence the defendant objected, unless the plaintiff introduced some evidence to prove, that *Abijah McEwen*, then in full life, authorized the defendant to receive such note, and make such promise. The judge overruled the objection, and admitted the evidence, on the ground that the acts and declarations of the defendant, before the death of his father, were evidence that his father had authorized him to do the acts and make the declarations. After the introduction of this evidence there was no proof of the defendant's authority, or of any promise made by him. The defendant contended, that in point of law, an act done by him before he was executor, and in the life-time of his father, did not conduce to prove the issue: the plaintiff contended, that the acts and declarations in question did legally conduce to prove the issue. The judge charged the jury, that such acts and declarations, made by the defendant before he was executor, and in the life-time of the testator, were evidence in the case, and conduced to shew, that he had an authority; and that the jury had a right to infer from them the authority of the defendant to do such acts as the agent of his father.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial, on the ground of the admission of improper evidence, and for a misdirection.

*N. Smith* and *Backus*, in support of the motion, contended,

*Fairfield,*
*June,*
*1823.*

Plant
*v.*
McEwen.

1. That the evidence adduced by the plaintiff, to prove the authority of the defendant, admitting it to be otherwise unexceptionable, was irrelevant for that purpose, or to prove any point in issue. The evidence was, that the defendant received a note against *Hawley*, and agreed to indorse it on a note which his father held against *Walker*. In receiving the note and making the agreement, he acted in his individual capacity : he did not even profess to act as agent. The naked fact, that a man has done what he could not properly do without authority, does not prove that he had authority. But there was no impropriety in the defendant's receiving the note, and promising to make a particular application of it, *on his own responsibility*. To do this, he needed no authority from any one.

2. That the acts and declarations of the defendant, done and made before he was executor, and while he had no interest in the subject matter, were inadmissible in this case, where the effect of a judgment for the plaintiff would be to establish, conclusively, a claim against the estate of *Abijah McEwen*. If *Abijah McEwen* were living, and this were a suit against him for a breach of the warranty, it would not be claimed, that any thing said or done by *Charles McEwen*, a mere stranger, could be received to affect the rights of the party. Does it make any difference, that *Abijah McEwen* is dead, and a proceeding is instituted to obtain satisfaction of the same claim out of his estate ? If there is any difference, it arises from the circumstance, that *Charles McEwen* is now a party to the record. With regard to the general rule on this subject, there is no room for controversy ; but it is not of universal application : it does not extend to an admission made by the party before he assumed the capacity in which he sues, or is sued, and while he had no interest in the subject matter. The reason of the rule, in such case, ceases. The reason why a man's declarations out of court are competent evidence, s, because it is to be presumed, that he will not make false declarations against his interest, or against the interest of another in whose place he stands. But can any such presumption arise, where the person making the declarations, at the time, has no interest, and acts merely in his individual capacity, though he afterwards becomes a nominal party ? Much harm has been done in jurisprudence, as well as in the political and religious world, by adopting a general rule, and then applying it, indiscriminately, to all cases.

Fairfield,
June,
1823.

Plant
*v.*
McEwen.

*Daggett* and *Sherman*, contra, contended, 1. That where a man has acted for another, as his agent, and in that capacity has received money for him, such acts are clearly evidence against the person who did them, that he was agent. This was *Charles McEwen's* case.

2. That the acts and declarations of the defendant were competent evidence, in this case, within the general rule as to the admissions of a party. In the first place, there is no exception whatever to that rule. None is stated or suggested, in the leading case of *Bauerman* v. *Radenius*, 7 *Term Rep.* 659. or in any other case or book. But, secondly, if there be any exception, this case is not within it. *Charles McEwen* is not a mere nominal party; he is not even sued as executor; but he is sued as obligor of the bond; and the judgment against him, when rendered, will be *de bonis propriis.* His individual interest alone is concerned. The declarations in question, at the time they were offered and received, were undoubtedly against the interest of the party who made them. The question then, is, Does it render these declarations inadmissible, that he had no conflicting interest, at the time he made them? Now, it is neither law, nor morality, that what a man has said on one occasion, or in one situation, is no evidence against him, on another occasion, or in another situation. In *Bulkley* & al. v. *Landon* & al. 3 *Conn. Rep.* 76. *Someryndike*, one of the plaintiffs on the record, had no interest in the matter in dispute; and yet it was decided, not only that his admissions were competent evidence, but that the want of interest could not be shewn for the purpose of diminishing their weight.

HOSMER, Ch. J. In this case, the plaintiff offered to prove, in order to shew the authority and agency of the defendant, that he received the note against *Isaac Hawley*, mentioned in the plaintiff's replication, and agreed to indorse the same on the note of *Abijah McEwen* against *William Walker*. To the introduction of this testimony the defendant objected, that his agency, at the time of the act and agreement aforesaid, by authority derived from *Abijah McEwen*, must first be established; but the objection was overruled, and the testimony admitted, on the ground that the acts and declarations of the defendant, before the death of the said *Abijah*, were sufficient evidence of his authority. On the adduction of the testimony, there was no proof, that the said *Abijah* authori-

HARVARD LAW LIBRARY

Fairfield,
June,
1823.

Plant
v.
McEwen.

zed the defendant to receive the said note, or make the said promise. In the charge to the jury, the judge instructed them, that the aforesaid acts and declarations of the said *Charles*, made and done in the life time of the said *Abijah*, and before the defendant was his executor, conduced to prove him an authorized agent ; and that the jury, on this foundation, had a right to infer his authority.

The facts above stated, present to the court, for determination, the general question, whether the reception of a note against *Isaac Hawley*, by *Charles McEwen*, from *Walker*, the debtor of *Abijah McEwen*, with an agreement to indorse the avails on *Walker's* note, was admissible evidence. The testimony, in my opinion, was clearly irrelevant. To render it available, the proof must establish the fact, that *Charles McEwen* at least assumed to receive the above-mentioned note, as the agent of his father. If the transaction was merely this, that the said *Charles* acted, and was understood by *Walker* to act, in his personal capacity only, and without authority from his father, it cannot, even with plausibility, be urged, that his act and agreement amounted to any thing more than a personal engagement, for the infraction of which, he alone can be personally responsible. That this was the nature and extent of the preceding transaction, is too manifest to admit of controversy. There is no pretence, that he held himself out to *Walker* as the agent of his father ; that he had the possession of *Walker's* note ; that he was ever requested to collect it ; or, finally, that he was his father's general or special agent. The naked act and engagement of the defendant, without the exhibition or actual pretence of any authority, imply no proof of agency ; nor do they constitute premises, from which any such inference can be deduced. The entire transaction between the defendant and *Walker* consisted in the reception of a note, with his individual contract to pay the avails to the creditor ; and in this transaction he was the agent of *Walker*, and not the agent of his father. The obligation was merely personal on *Charles McEwen* ; and for aught that has been made to appear, the money was collected, and now remains in his hands.

As to the competency of the evidence, were it relevant, I should consider it free from objection, if it affected the rights and interests of *Charles McEwen* only. On general principles, the declarations and acts of the party on record, whether he had, or had not, an interest in the subject, at the time

of making or performing them, are admissible in evidence against him. There is hardly any rule so universal as to be free from exception; for a case without the reason of the rule, cannot be considered as embraced within the provision. The declarations or acts of a person, who has become a party to the record, ought to affect him personally; and upon the same principle, it is reasonable, that they should act upon those who derive their property through him, or who have confided their interests to his care. The latter comprises the case of a trustee, whose acts and declarations are operative against the *cestui que trust*. But *Charles McEwen* is not the trustee of the heirs or creditors of his deceased father; nor is the estate derived through him to the heirs: he is merely the agent of the law. To them he is as much a stranger as a creditor would be, who had taken out administration on the estate of the deceased; and upon any principle, which would authorize the proof of an act or contract of his, anterior to the acceptance of the trust of executor, to affect the estate committed to his care, a similar act or contract of a creditor, would be equally admissible, and with equal effect, if he should become an administrator.

It has been contended, that a judgment against the defendant, would act on him personally, and that the payment of it would not constitute a claim against the estate of his deceased father. This proposition is manifestly unfounded, and admits of no support. The judgment would be *prima facie* evidence, at least, to sustain his demand; nor would the effect of it be diminished, by the consideration, that it was obtained on the proof of his act and declaration anterior to his father's death. In absence of proof, this act and declaration must be considered as founded in truth, and not as evincive of fraud or misconduct; nor am I aware of any principle, by force of which the executor can be made to suffer for the performance of a lawful and justifiable act.

I am not insensible, that the rule relative to the admissions of a party on the record, is laid down in very comprehensive terms; but the exception already mentioned the interests of justice imperiously demand. The hardship on the heirs of a deceased person, deprived of their property, by the acts or declarations of a mere stranger, is both obvious and forcible; and the adoption of a rule, attended with this result, would be inequitable and inconvenient. I am satisfied, that the exception before-mentioned, is maintainable

*Fairfield,*
June,
1823.

Plant
*v.*
McEwen.

HARVARD LAW LIBRARY

*Fairfield,*
*June,*
*1823.*

Plant
*v.*
McEwen.

on solid ground, as not being within the reason of the general rule which I have admitted; and that the reception of the testimony and charge to the jury, in this case, were both incorrect.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

CHAPMAN, J. dissented.

New trial to be granted.