Johnson
v.
Blackman.

JOHNSON *against* BLACKMAN.

In action on a promissory note, brought and prosecuted by the assignee, in the name of the payee, against the maker, it was held, that the plaintiff on the record was a competent witness for the defendant.

It is no objection to the competency of a witness, called to impeach the validity of a note, that he had assigned it, and thereby given it currency.

The assignor of a note not negotiable is not precluded, by the statute of 1822, *s.* 1. (*p.* 61. *ed.* 1835.) from giving testimony to prove payment of the note to him.

Where *A*, the payee of a note, made jointly and severally by *C* and *D*, assigned it to *B*, with an indorsement thereon in these words : "I assign the within note to *B*" [signed by *A*] and received another note of the same amount from *B*, who was executor of *C ;* in an action on the former note against *D*, it was claimed, that this note was paid by the note of *B*, and a witness offered by *D* to establish this defence, testified, that the indorsement was not made by *A* until after the note in question was paid, but at the same interview; it was held, that this testimony was not exceptionable, as being either within the rule, that when an agreement is reduced to writing, all previous negotiations are merged in the writing, or within the rule, that parol evidence cannot be received to contradict or vary a written instrument ; *D* being a stranger to the transaction between *A* and *B* relative to the payment and indorsement of the note, and not estopped, by their acts, from proving a fact essential to his defence.

Where it appeared on the trial of such action, that previous to the assignment of the note, the estate of *C* had been represented insolvent, and commissioners had been appointed, who made their report, some months after the assignment, allowing the amount of the note to *B* ; and the plaintiff claimed, that *B* could not, at this time, act in the payment of debts due from the estate of *C*, as executor, but that all payments made by him of claims against the estate, after the appointment of commissioners and before the acceptance of their report, would be regarded in law as done by him in his individual capacity, and would confer upon him all the rights of an assignee of such claims ; it was held, that although *B* had a right to purchase the note in his individual capacity ; and although he was not, at that time, bound, as executor, to pay the note, or to do any thing with it ; yet he might, legally and with propriety, purchase and receive it, as executor; and if in such transaction, he acted solely for the benefit of the estate, it is to be presumed that he acted as executor, and the action brought could not be sustained.

The law always presumes, that a trustee, when acting in reference to the subject of the trust, acts in the character of trustee, for the benefit of the trust estate, and not for his individual benefit ; and this rule is applicable to executors.

A new trial will not be granted for a misdirection, where entire justice has been done.

*Fairfield,*
June, 1836.

Johnson
*v.*
Blackman.

THIS was an action on a promissory note, payable to the plaintiff, made by *Ammon B. Blackman*, (the defendant,) *Ebenezer Blackman* and *James Peck*, since deceased, jointly and severally. The defendant pleaded, 1st, payment generally; 2ndly, payment by a promissory note, given by the executors of *James Peck*, which the plaintiff accepted for the note in suit, and in full payment thereof; 3rdly, payment in the course of settlement of *James Peck's* estate, averring, that *James Peck* died on the 20th of *October*, 1832; that *Alexander Hall* and *Sally Peck*, widow of the deceased, were appointed executors and accepted the trust; that they made and delivered to the plaintiff their note for the note in suit; that the plaintiff thereupon delivered to them the note in suit, with his indorsement thereon, in these words: "*March* 28th, 1833. I assign the within note to *Alexander Hall.* [signed.] *John Johnson.*" That the estate of *James Peck* was represented insolvent and commissioners were appointed; that on the 1st of *April*, 1833, *Alexander Hall*, by whom the note in suit was then held, presented it to the commissioners for allowance, by whom it was allowed in full; that the report of commissioners allowing such claim, was accepted and approved, by the court of probate; that after all the claims against said estate had been allowed and the amount ascertained, there remained in the hands of the executors a large sum over and above all claims, from which said *Hall* received full payment of the note in suit. These pleas were traversed, by the plaintiff; on which issues were joined.

The cause was tried at *Fairfield, December* term, 1835, before *Church*, J.

It was admitted, that the plaintiff on the record received of *Alexander Hall* a promissory note, signed by himself and *Sally Peck*, in their names, without addition, of the same amount as the note in said suit; and that thereupon the plaintiff made an endorsement on the note in suit in these words: "*March* 28th, 1833. I assign the within note to *Alexander Hall.* [signed,] *John Johnson.*" That while the cause was on trial, *Hall*, in order that he might be a witness, assigned this note to a second assignee, by whom the present suit was thereafter prosecuted; that before this time, *James Peck* had died; and that *Hall* and *Sally Peck*, were then his executors.

It was claimed by the defendant, that the note given by

them to the plaintiff, was received by him in payment and full satisfaction for the note in suit.

In support of the two first pleas, the defendant offered the plaintiff on the record to testify.  To his admission as a witness, for that or any other purpose, the plaintiff in interest objected, on the ground that he was a party to the record ; but the court over-ruled the objection and admitted him to testify.

The defendant then offered to prove, by this witness, that the note in suit, just before the assignment, and at the same interview, was paid and fully satisfied, by the note of *Alexander Hall* and *Sally Peck*, received at that time.  To the admission of this testimony the plaintiff in interest objected, on the ground that the transaction between *Hall* and the plaintiff on the record was reduced to writing; and that parol evidence was inadmissible to contradict or vary the written evidence.  The court over-ruled the objection, and admitted the evidence.  The witness thereupon testified, that the endorsement was not made until after the note was paid, but at the same interview.

The plaintiff in interest also objected to the testimony of this witness, on the ground that after the assignment was made, and notice thereof given to the defendant, by the proof previously given of the assignment, the promisee of the note could not be admitted to impair its validity at the time of the assignment, in the hands of the assignee; and that no declaration or admission of the promisee of the payment of the note, previous to the assignment, whether in court under oath, or otherwise, was admissible in evidence, it being in contravention of the statute of 1822.  The court, however, admitted the evidence.

*Alexander Hall* was also called as a witness, by the plaintiff, who testified, that he purchased the note in suit, and so informed *Johnson*, the plaintiff on the record, at the time of the assignment.

*Hall* also testified, that the reason of his making the purchase, was, that he understood, that *Peck* signed the note in suit, only as surety for the other makers ; and that his object was, to have the controul of the note, that he might collect it of those whose duty it was to pay it.

It was admitted, that previous to the assignment, the estate of *Peck* had been represented insolvent, and commissioners had been appointed; and that the report of the commissioners al-

lowing the amount of the note in question to *Hall*, was return-
ed to and accepted by the court of probate, on the 5th of *August*,
1833.

*Fairfield,*
June, 1836.
———
Johnson
*v.*
Blackman.

The plaintiff in interest thereupon claimed, that at the time
when the note was assigned to *Hall*, he could not act in the
payment of debts due from the estate, as an executor ; and that
all payments made by him of claims against the estate, after the
appointment of commissioners, and before the acceptance of
their report, would be regarded in law as done by him in his in-
dividual capacity, and would confer upon him all the rights of
an assignee of such claims ; and if otherwise, still that the cir-
cumstances of the case would furnish strong presumptive evi-
dence, that such payment was made in his individual capacity,
as a purchaser, and not as an executor ; and claimed, that the
court should so charge the jury.

The court refused so to to charge the jury, and charged them
as follows : " One question is, whether the note was paid and
satisfied by *Hall*, or whether it was purchased by him. If
it was paid, the plaintiff cannot recover. If it was not paid,
the question arises, whether it was assigned to him, and in
what capacity. He was not bound, at that time, as executor,
to pay the note, or do any thing with it. He had a right to
purchase the note, in his individual capacity. If he purchased
it as an executor, and received it in that capacity, it would be
immaterial what the form of the transfer was : the plaintiff
cannot recover. But if he purchased in his individual capaci-
ty, the note was not thereby satisfied, and the plaintiff is enti-
tled to recover. If he acted solely for the benefit of the estate,
in the affair regarding the note, it is to be presumed, that he
acted as executor, and the plaintiff cannot recover."

The jury found the issues in favour of the defendant ; and
the plaintiff moved for a new trial.

*Betts* and *Dutton*, in support of the motion, contended, 1.
That *Johnson* was an incompetent witness : first, because he
was party on the record. Secondly, he is excluded, by the
statute of 1822. *Stat.* 61. ed. 1835. To allow the plaintiff
on the record to testify, would defeat the right of the assignee.
2. That if he was a competent witness, still his testimony
was inadmissible. First, because the whole negotiation was
merged in the writing. *Dean* v. *Mason*, 4 *Conn. Rep.* 428.

3 *Stark. Ev.* 1002. Secondly, because parol evidence was inadmissible to contradict or vary the writing. *Reading* v. *Weston*, 8 *Conn. Rep.* 118. *Benton* v. *Jones* & al. 8 *Conn· Rep.* 186. 3 *Stark. Ev.* 1002. This case is not within any of the established exceptions to the rule. *Stackpole* v. *Arnold*, 11 *Mass. Rep.* 27.

3. That the charge to the jury was incorrect. In the first place, the presumption, under the circumstances, was, that *Hall* acted in his individual capacity. Secondly, if otherwise, it should have been left to the jury as presumptive evidence merely, and not as conclusive. Thirdly, the law conferred on *Hall* the rights of an assignee, whatever object he might have had in procuring the note.

*Sherman*, contra.

HUNTINGTON, J. On the trial of this cause at the circuit, the plaintiff on the record was offered as a witness, by the defendant, in support of the defence ; and notwithstanding the objection of the assignee of the note for whose benefit the suit is prosecuted, he was admitted. The opinion of the judge on this point, is supposed to be erroneous; and the motion for a new trial, presents it, to this court, for revision.

It is insisted, that he is an incompetent witness, *because he is plaintiff on the record.* This objection has been often pressed upon courts of law, both in *Great-Britain* and the *United States*, and as often held to be untenable. If a plaintiff voluntarily chooses, against his own interest, to be used as a witness, by his adversary, it would be difficult to find any rule of law, or policy, or equity, which would exclude him. *Tindal*, Ch. J., in giving the opinion of the court, in the case of *Worrall* v. *Jones* & al. 7 *Bing.* 395., with that precision and accuracy for which he is distinguished, says, no case has been cited, nor can be found, in which a witness has been refused, upon the objection in the abstract, that he was a party to the suit: on the contrary, many have been brought forward, in which parties to the suit, who have suffered judgment by default, have been admitted as witnesses against their own interest: and the only enquiry seems to have been, in a majority of the cases, whether the party called, was interested in the event or not; and the admission or rejection of the witness has depended on the result of this enquiry. That a party to the

record should not be *compelled*, against his consent, to become a witness in a court of law, is a rule founded in good sense and sound policy : it forms the point of the decision in the case of *The King* v. *Woodburn*, 10 *East* 395. ; and the decision of that case leads to the necessary inference, that if the party consents to be examined, he is then an admissible witness. We think, therefore, where the party to the suit, who has suffered judgment by default, waives the objection, and consents to be examined, and is called against his own interest, there is no ground, either on principle or authority, for rejecting him. The same doctrine was established in *Norden* v. *Williamson,* 1 *Taunt.* 378. We have adopted this rule in *Connecticut. Comstock* v. *Hadlyme,* 8 *Conn. Rep.* 254. *Cowles* v. *Whitman,* 10 *Conn. Rep.* 121. The case of the *Columbia Manufacturing Co.* v. *Dutch,* 13 *Pick.* 125., does not establish a different rule. The court waive a discussion of the questions, whether in any case, or if in any, under what circumstances, a person whose name appears on the record, can be a witness, and held the witness incompetent, on the ground, that he had an interest in testifying in favour of the party calling him. It was, however, urged, that the cases decided by this court, were either proceedings in chancery, or resembling such proceedings ; and it is not denied, that in chancery, persons who are defendants on the record, if they have no interest, may be witnesses. *Neilson* v. *McDonald,* 6 *Johns. Ch. Rep.* 204. There is, however, no distinction in the two courts, in relation to this point. It is true, that in equity, a party may be *compelled* to testify against his interest, on a bill for a disclosure ; or he is admitted, substantially, as a witness in his own favour, when he makes answer on oath, to a bill filed against him. With these exceptions, the rule ought to be and is the same in both courts, as to the right of a party to examine his adversary, if the latter voluntarily consents to be examined, and is called against his interest. The most discriminating mind would find it impossible to make even the shadow of a distinction between them. The party on the record is admitted to testify, under such circumstances, in both *courts,* for precisely the same reason—because he waives his privilege, is willing to speak the truth, though against his interest, and voluntarily renounces the protection, which policy, as well as justice, would otherwise have afforded him. The cases before mentioned in 1 *Taunt.*

*Fairfield,*
June, 1836.

Johnson
*v.*
Blackman.

378., and 7 *Bing.* 395., were suits at law ; and the reasons given in those cases, are the same as those which are adopted in like cases in chancery. *Beebe* v. *Bank of New-York,* 1 *Johns. Rep.* 555. 566. 577. *per Kent* and *Spencer,* Js. *Pidcock* v. *Brown,* 3 *P. Wms.* 288., *Colton* v. *Lutterel,* 1 *Atk.* 451. *S. C.* 2 *Ves.* 233. 284. We are well satisfied, that this objection to the witness was properly overruled.

The next ground of objection to the competency of the witness, is, that he cannot be received to impeach the validity of the note to which he has given currency, by assigning it. We do not deem it necessary to make any other answer to this claim, than that it was rejected, by an unanimous opinion of this court, in *Townsend* v. *Bush,* 1 *Conn. Rep.* 260., that this decision has, ever since, been regarded as having made a final disposition of the point made and decided, and is not now open for discussion.

A third ground of objection to the witness (*Johnson*) is, that he was called to defeat the equitable rights of the holder of the note, which were created by the assignment made by him to *Hall :*—and it is insisted, that the promisee of a note, (though the plaintiff on the record) after an assignment by him to a third person, and notice to the defendant, cannot be permitted to abridge or defeat any of the rights, which are acquired by the assignee, by virtue of the sale, assignment and warranty to him ; and that no declaration or admission of such promisee, of the payment of the note previous to the assignment, whether in court under oath, or otherwise, can be received in evidence.

This claim is not attempted to be sustained upon any principles known to the common law. In *Bauerman* v. *Radenius,* 7 *Term Rep.* 668, 9., Lord *Kenyon* says, I take it to be an incontrovertible rule, that the admission made by the plaintiff on the record, is admissible evidence : and *Lawrence,* J. observes, I have looked into the books to see if I could find any case, in which it was holden, that the admission of a plaintiff on the record was not evidence, but have found none. It must be considered, that the plaintiffs have an interest, in order to support the action ; and if they have, an admission made by them, that they have no cause of action, is admissible evidence. *Grose,* J. added, as long as *Bauerman & Co.* are plaintiffs on the record, they must be taken to be so in all their consequences. The like doctrine is declared in *Strong* v. *Wheeler,*

5 *Pick.* 410., *Lambert,* v. *Craig,* 12 *Pick.* 199., and also by this court, in *Bulkley* & al. v. *Landon,* 3 *Conn. Rep.* 78., and in *Plant* v. *McEwen,* 4 *Conn. Rep.* 544. In the latter case, it is said, on general principles, the declarations and acts of the party on record, whether he had, or had not, an interest in the subject, at the time of making or performing them, are admissible in evidence against him. This rule does not, however, apply to admissions of persons acting in a representative character, as executors, administrators, and assignees of bankrupts, made before they become such, and which do not affect them personally, but others, to whom they were strangers, when made. 4 *Conn. Rep.* 549. 550. *Pease* v. *Phelps,* 10 *Conn. Rep.* 62. *Fenwick* & al. v. *Thornton,* 1 *Moo. & Malk.* 51. *Webb* v. *Smith,* 1 *Ry. & Moo.* 106.

The defendant very properly declined urging the rejection of this evidence, on any common law principle, but insisted that the statute passed in 1822, (*vol.* 2. *ch.* 12. *p.* 19. ed. of 1835. *p.* 61.,) made it inadmissible; and that it could not be received, without contravening both the letter and spirit of that act. The statute is in these words: "Whenever the defendant, in any suit upon a bond, note or other chose in action not negotiable, shall plead or give in evidence, the discharge, admission or other act of the plaintiff, or any payment made to him, or transaction whatsoever between the plaintiff and defendant, it shall be lawful for the plaintiff to reply or prove, as the case may require, an assignment of such chose in action, and notice thereof given to the defendant; and on the same being made to appear, such discharge, admission, payment or other transaction, shall be no otherwise available in such suit in favour of the defendant, than the same would or ought to be in a court of equity." Were it necessary to a correct decision of the point now under examination, that we should hold this statute to have introduced a new rule of evidence in a court of law, we should hesitate before we gave such a construction the sanction of our authority. It might be urged, with much force, that this act was not designed to change any established rule of *evidence,* but to introduce a new rule of *pleading;* and was designed simply to permit the assignee at law, in the form of a replication, or by way of proof, to aver and prove an assignment of the note to himself and notice to the defendant, and in this manner to avail himself of these facts, to the same extent

*Fairfield,*
June, 1836.

Johnson
*v.*
Blackman.

he could have done, independently of the statute, only in equity. Waiving, however, any discussion of this question, it is very apparent this statute has not the most remote bearing upon the point before us. It was not enacted to exclude the testimony of a *competent witness.* It does not disqualify the assignor of a note from being a witness. It was, doubtless, designed to give effect to the doctrine, that the assignment of a note not negotiable, is a transfer of the equitable title, which both courts of law and equity will recognise and protect. *Lyon* v. *Summers,* 7 *Conn. Rep.* 406. But that effect was not to be produced, by arbitrarily shutting out the testimony of a witness, (although he was the assignor) who appeared before the court with no legal disqualification.

We were, however, told, that as the statute operated upon the confessions of the assignor and excluded them, as a necessary consequence, it made him an incompetent witness. We think this is a *non sequitur.* And a single enquiry, with the only answer which a court of law or equity would give to it, will evince the fallacy of this ingenious argument. Suppose the defendant had filed a bill in equity, calling on *Johnson* to disclose the same facts as to the payment of the note, which, the motion states, he voluntarily communicated as a witness, is there any doubt that chancery would have compelled him to make the disclosure? Would this statute, or any known legal or equitable principle, have been an impediment to a decree for such a disclosure? Could this act have been interposed as a bar to such a bill; and would the plea of the statute have been sustained on demurrer? We think not: and yet, we are asked to exclude a voluntary disclosure, made on oath, by the parol testimony of a witness, which, sitting in equity, on a bill filed for that purpose, we should not only permit, but require him to make. We are clear, that this ground of objection to the witness ought not to prevail.

Exception was also taken to the introduction of the evidence, as being, in its character, inadmissible. It was urged, that the testimony could not be received without a violation of two plain principles of law;—that when an agreement is reduced to writing, all previous negotiations are merged or resolved into the writing, as being the best evidence of the certainty of the agreement. *Barber* v. *Brace,* 3 *Conn. Rep.* 15., *Dean* v. *Mason,* 4 *Conn. Rep.* 428. and cases there cited: And that parol evidence

cannot be received to vary or contradict a written instrument. *Treadwell* v. *Bulkley*, 4 *Day* 395. *Palmer* v. *Green*, 6 *Conn. Rep.* 14. *Dean* v. *Dean*, *Id.* 285. *Woodbridge* v. *Spencer*, & al. 3 *B. & Ald.* 233. This is very familiar law. It establishes a rule which is certain ; prevents the consequences which might otherwise result from the mistake or perjury of a witness ; and is highly useful and salutary. We have, however, not been able to discover its application to the case before us. The plaintiff on the record had received of *Hall* a note, signed by him and *Sally Peck*, of the same amount as the note in suit, which latter note, he indorsed in these words : "I assign the within note to *Alexander Hall*. *John Johnson.*" It was claimed, by the defendant, that this note was given by *Hall*, as *executor* of *Peck*, to the plaintiff, and by him received in payment and full satisfaction of the note in suit ; and he offered to prove, by the testimony of the plaintiff, that the note in suit, at the time when the note of *Hall* and *Peck* was given, and at the same interview, just before the assignment and indorsement were made, was paid and fully satisfied, by the last-mentioned note. The objection to this testimony was attempted to be maintained, on the ground that the transaction between *Hall* and the plaintiff, was reduced to writing, which could not be contradicted nor varied, by parol. It was received by the court, and the witness testified, "that the indorsement was not made by him, until after said note was paid, but at the same interview." Several answers may be given to this objection ; but it will be sufficient to mention one, which has the support both of principle and unquestionable authority. It is to be remembered, the defendant was a stranger to the transaction between the plaintiff and *Hall*, relative to the payment and indorsement of the note in suit. His defence against the claim made upon him, was, that the note had been paid. His pleas, although diversified in form, were all pleas of payment ; and the proof offered, was introduced to sustain them. Were it conceded, that this evidence is inconsistent with the written assignment, (which we are not to be understood as admitting) it would not, on that account, be inadmissible, *when offered by the defendant.* If the note had been paid, and thus all the legal obligations arising from it, on the part of the promisers, had been discharged and extinguished, it was a fraud on the defendant, to attempt to enforce its collection. He was not estopped, by the

*Fairfield, June, 1836.*

Johnson
*v.*
Blackman.

*Fairfield,*
*June, 1836.*

Johnson
*v.*
Blackman.

acts of third persons, to which he was not a party, from proving a fact essential to his defence, and which conclusively established it. The law of estoppels has not yet been extended to embrace other persons than those who are parties or privies to the facts which create the estoppel. If they have never been favoured in law, because they preclude an enquiry into the truth ; (*Smith* v. *Sherwood,* 4 *Conn. Rep.* 276. *Smith* v. *Silliman,* 8 *Conn. Rep.* 111. *Wadsworth* v. *Marsh,* 9 *Conn. Rep.* 481. *Right* v. *Bucknell,* 2 *B. & Adol.* 278.) they would become still less favourites, if extended so as to conclude strangers to the proceedings from which they emanate. In what relation the makers of this note stood to each other, whether all were in fact principals, or a part sureties, does not appear. *James Peck* deceased may have been equitably bound to pay the whole note. For aught which this motion states, he may have been the principal, and the other promisers, mere sureties. And if such were the fact, can it be doubted, that the defendant might shew, that the representatives of the principal had paid the note, and thus extinguished the legal obligations of the sureties? In the ordinary case of a sale of personal property with warranty by the vendor, was it ever supposed, in a suit between the vendee and a third person claiming to be the owner, touching the title to the property, that the latter was precluded or estopped from proving, that he was in fact the owner, and that the vendor had no authority to make the sale ? Could the vendee successfully insist, that he had made the purchase *bona fide,* supposing his vendor had title ; and that to allow the true owner to prove *his* title, would contradict the written warranty which accompanied the sale ? And yet such a claim would not be more extravagant than to insist, that one of the makers of a note in suit, cannot prove its payment by another promiser, because such note is in the hands of an assignee, who has taken it with warranty from one to whom the defendant is a stranger. To exclude such proof, would be subversive of every principle of justice and equity, and in opposition to numerous adjudications. A written agreement may conclude the parties to it. It may, as between them, exclude all parol evidence to contradict, vary, or materially affect it, by way of explanation ; but a stranger is not estopped by such agreement. *He* is always permitted to " adduce parol testimony to prevent a fraudulent operation of it upon his interests."

*Reading* v. *Weston*, 8 *Conn. Rep.* 117. *Rex* v. *Scammo-den*, 3 *Term Rep.* 474. *Gilmer* v. *Gott*, 4 *Bro. P. Ca.* 230. (*Toml.* ed.) *King* v. *Laindon*, 8 *Term Rep.* 379. In the case of *The Overseers of New Berlin* v. *The Overseers of Norwich*, 10 *Johns. Rep.* 230., the court say : " The overseers of *New Berlin* were clearly entitled to show this fact," (that no part of the consideration expressed in the deed had been paid by the grantee) " and were not estopped from showing it, by the deed *to which they were not parties.* Such a conclusion would be unjust, by enabling a person, at any time, to procure a settlement, by a purchase without payment, and so to defeat the provisions of the act. It is a general rule, that parties and privies are estopped from contradicting a written agreement, by parol proof ; but the rule does not extend to strangers, who have an interest in investigating and knowing the real truth of the case." In the case before us, it appears, the defendant insisted, that the suit was commenced to recover of him, the amount of a note, which had been previously paid ; that a fraudulent use was attempted to be made of the instrument, adverse to his interests ; and the evidence which he offered, was designed to strip the transaction of the colouring, which the plaintiff, under the forms of law, had put upon it, and to exhibit it in its true light, as an attempt to enforce the collection of a paid note, and thus, in effect, to pervert the process of the law, to attain a fraudulent object. The law would be justly liable to reproach, if it had provided no means to prevent such injustice. We are satisfied it is obnoxious to no such imputation ; and that the judge, who tried this cause, in overruling the objections to the offered evidence, and permitting it to go to the jury, was governed, as well by the clearest principles of justice, as by numerous and firmly established precedents.

Another question has been argued before us, growing out of the charge to the jury. The court was asked to instruct them, that at the time when the note in suit was assigned to *Hall*, he could not act, in the payment of it, *as an executor :* that all payments made, by him, of such claims against the estate of the deceased *Peck*, as the note in question, after the appointment of commissioners, and before the acceptance of their report, would be regarded in law, as done by him in his individual capacity, and would confer upon him, all the rights of an assignee of such claims : or if otherwise, still that these circum-

*Fairfield,*
June, 1836.

Johnson
*v.*
Blackman.

stances would furnish strong presumptive evidence, that such payment was made in his individual capacity, as a purchaser, and not as executor. This instruction the court refused to give; but did instruct them, that one question in the case was, whether the note was paid and satisfied by *Hall*, or was purchased by him? That if it was paid, the plaintiff could not recover. If not paid, was it assigned to him, and in what capacity? He was not bound, at that time, as an executor, to pay the note, or to do any thing with it. He had a right to purchase it, in his own individual capacity. If he purchased it as an executor, and received it in that capacity, it would be immaterial what the form of the transfer was; the plaintiff could not recover: but if he purchased it in his individual capacity, the note was not thereby satisfied, and the plaintiff should recover. If he acted solely for the benefit of the estate, in the affair regarding the note, it is to be presumed, that he acted as executor, and the plaintiff cannot recover.

Notwithstanding the able and ingenious argument of counsel, in support of this exception to the proceedings in the court below, we are satisfied, that the judge was perfectly justified in refusing the instruction which was asked; and that there was no error in the instruction which was given. We have attentively considered this argument, both in respect to the reasons urged and the authorities cited in support of it. We think it destitute of any solid foundation. It is, in substance, that *Hall* had no authority, as *executor*, to pay the note. The estate of *Peck* was represented insolvent; commissioners had been appointed, whose duties were not discharged, at the time of the assignment; their report had not come in. Under these circumstances, the executor, *having no other rights nor powers than such as are conferred by law, cannot apply any part of the property of the testator to the payment of the debts of the latter;* he can neither adjust nor pay them; as executor, the law conferred on him, no authority to pay the debt, and then present it to the commissioners as a claim to be allowed; and consequently, he is to be considered as having *purchased* the note, though in fact, he may have *paid* it. In any event, however, it is to be presumed he did not act in the transaction, in opposition to his appropriate duties, but rather within the line of his legal duty; that if a loss had been sustained, growing out of this note transaction, it could not have been charged to

the estate of *Peck*, but would have fallen on *Hall* individually; and therefore, the presumption is strong, that in relation to the note, he was a purchaser of it, on his own account.

That an executor is *precluded* from paying a debt of the testator, merely because the estate is represented insolvent, and the commissioners have not completed their report, is a proposition, which is contradicted alike by the dictates of reason and experience. It is not unusual for estates to be represented insolvent, which are known to be solvent. Instances have occurred, where the estates of very wealthy citizens have been so represented, with the view of having all claims upon them settled in the most economical and expeditious manner, and to prevent protracted litigation, with all its ruinous consequences. This course is sometimes adopted, not from any disrespect to the memory of the deceased, but to enable the executor or administrator to have a particular claim examined, adjusted and settled, by a board of commissioners, rather than to wait the slow process of a judicial investigation in the courts of law, and incur the expenses which would attend an adjustment in that form. May he not, however, with safety, pay an undisputed debt; have it allowed, in his own name or in the name of the creditor; and if the estate prove to be solvent, be justified, in such payment, by the event? What rule of law, or principle of policy or justice is infringed, by permitting the executor of the will of a solvent testator, to pay his just and admitted debts, although the commissioners have not reported? Cannot the creditors properly receive payment of these debts, of the executor? And will he not be allowed to pay them, because they are not yet liquidated, by the commissioners? It may be, that he pays at his peril. It is not necessary to decide what would be his condition, if, in good faith and full belief that the estate was sufficient to pay *all* the debts, he should pay some, and the estate eventually prove insolvent. We consider it unnecessary to decide, whether in such case, he would have any remedy against the creditor, for a reimbursement. No such question is presented, by this motion; but the enquiry is simply this, whether one joint maker of a promissory note, who is sued on it, is precluded from offering evidence to prove, that the executor of another joint promiser has paid it, in the character of executor, because, at the time of such payment, the estate of the deceased had been represented insolvent, and the commissioners

appointed to adjust the claims, had not made their report? To such an enquiry, law and justice return the same answer.

The exception to the refusal of the court to instruct the jury in the manner asked by the defendant, is not, however, so strongly insisted on, as that which is made to the charge actually given. The principal ground of complaint is, that the jury were instructed, " if *Hall* acted solely for the benefit of the estate, in the affair regarding the note, it is to be presumed, that he acted as executor, and the plaintiff cannot recover." It is supposed, by the plaintiff, that the presumption was precisely the reverse of this; that the law presumes every trustee will act within the limits of his prescribed duty; and that, inasmuch as when he took an assignment of the note, the law imposed no duty on him to *pay* it, even if it did not prohibit such payment, the inference is just, that he confined himself within the bounds limited by law, and *purchased* the note on his individual account, and thus became clothed with all the legal rights of an *assignee.*

We think the facts stated in this motion, authorised the opinion expressed by the judge. His charge, in this particular, is to be taken in connexion with all which appears on the motion. It is there stated, that the note given in payment, was executed by *Hall* and *Sally Peck;* that they were executor and executrix of the will of *James Peck,* the deceased promiser, at the time of such execution; that the note was for the same amount as the note in suit; that the plaintiff testified it was received in full payment and satisfaction of the latter note: that *Hall* testified, although he purchased the note in suit, in his individual capacity, that the reason which influenced him in making the purchase, was, he understood *Peck* signed it as surety to the *Blackmans,* and his object was to have the controul of the note, that he might collect it of those whose duty it was to pay it. In view of these facts, it would be extremely difficult to make any other inference or presumption, than that *Hall* acted as *executor* in the transaction. If he took an assignment of the note, because he supposed his testator was a surety only, and with the single object of obtaining possession of it, that he might controul it and compel the principals to pay it, it is manifest he must have purchased it for the benefit of the estate which he represented. He made no profit, by a purchase on his own account; and in that character, it was wholly im-

material, whether it was paid to him, by the principals or the sureties : but he believed it would be beneficial to the estate, if, as executor, he took up the note, kept the controul of it, and compelled payment from those, who, in equity, were bound to discharge it.

*Fairfield*,
June, 1836.

Johnson
*v.*
Blackman.

The charge, can, however, be vindicated on other and distinct grounds. The jury were told, the presumption that he acted, as *executor*, in the purchase, might be made, " if he acted solely for the benefit of the estate in the affair." This inference was to be drawn, provided they should find he purchased in the character of trustee for those interested in the estate. And surely, if he so purchased, he could have acted only as executor ; and this is precisely what was stated to the jury. Besides, it was his duty to conduct, in relation to every matter connected with the estate, in such manner as would tend most to its advantage ; and the law always presumes, that a trustee, when acting in reference to the subject of the trust, acts in the character of trustee, for the benefit of the trust estate, and not for his individual benefit. Hence, it is an established rule in equity, that a trustee cannot act for his own benefit, in a contract relating to the subject of the trust. *Lees* v. *Nutall*, 1 *Russ. & Myl.* 53. S. C. *Taml.* 282. *The Schooner Tilton*, 5 *Mason*, 479. 480. *Green* v. *Winter*, 1 *Johns. Ch. Rep.* 27. *Parkist* v. *Alexander*, *Id.* 394. *Reed* v. *Warner* & al. 5 *Paige's Ch. Rep.* 650. He is not allowed to make any gain, profit or advantage from the use of the trust fund. *Green* v. *Winter*, supra. *Whichcote* v. *Lawrence*, 3 *Ves.* 740. If he purchase a judgment or mortgage, which is a *lien* on the trust estate, at a discount, he cannot turn it to his own advantage, but it enures to the benefit of the trust estate. *Evertson* v. *Tappen*, 5 *Johns. Ch. Rep.* 497. *Stanley* v. *Mancius*, 7 *Johns. Ch. Rep.* 174. *Byrchall* v. *Bradford*, 6 *Madd.* 235. He is not even permitted to use the information he gains as trustee, by purchasing in for himself; and the principle is the same as to buying in the trust estate, or securities upon it.

The same rules which are established as to *trustees*, in these particulars, are applied to *executors*. They are trustees or agents, acting not for their own benefit, but for the benefit of all who have an interest in the estate. *Banks* v. *Judah*, 8 *Conn. Rep.* 145. *Jacob's Ch. Rep.* 411. *Pease* v. *Phelps*, 10 *Conn. Rep.* 68. Applying these principles to the present

case, it is to be presumed, that *Hall,* when he received an assignment of the note, for the purposes mentioned, acted in the character of a faithful trustee, with a view to the ultimate advantage of the estate, and not his own private interest. It may be added, that the charge, in the particular complained of, was rather an expression of an opinion upon a matter of *fact,* than a direction upon a point of *law.* The controversy between the parties, in this stage of the cause, was, whether the note had been paid or assigned; or if not paid, whether it was assigned to *Hall,* in his character of executor, or in his individual capacity; and the jury were informed, that "if he acted in the affair, solely for the benefit of the estate," it was a fair inference that he acted as executor; and if they should draw that inference, the fact in dispute would be no longer doubtful. In this view, the remark was proper: and even had too much weight been given, by the judge, to the facts from which the presumption was derived, we might say, as we said in *Swift* v. *Stevens,* 8 *Conn. Rep.* 431., the attention of the jury was properly called to them; and as there is no claim that the verdict is against evidence, there is no ground for a new trial. A new trial for misdirection is not granted, because the judge expresses a strong opinion upon the facts either way. *Belcher* v. *Prittie,* 10 *Bing.* 408.

We have felt it to be our duty to notice the various objections made to the proceedings in the court below, and to express our opinion that none of them ought to prevail. We are not, however, to be understood, by adopting this course, to admit, that were the instructions given to the jury erroneous, a new trial ought to be granted. It appears from the motion, that the note in suit has been paid to the plaintiff on the record. The plea avers, that the note executed by *Hall* and *Sally Peck,* was accepted and received by the plaintiff, in full payment of the note in controversy; and this the jury have found. And the claim of *Hall* on the note has been legally established; and he has in his hands, as executor, funds of the estate, which are liable and more than sufficient for its payment. Entire justice has been done to the parties; and the granting a new trial, would rather pervert than subserve the ends of justice. The application is addressed to our discretion: we never sustain it, when the verdict is right, and consistent with the facts and justice of the case. *Edmonson* v. *Machell,* 2 *Term Rep.*

4. *Wickes* v. *Clatterbuck,* 3 *Bing.* 483. *Meredith* v. *Gilpin,* 6 *Price* 146. *Bates* & al. v. *Coe,* 10 *Conn. Rep.* 280. Upon the whole, there is no just ground of complaint against the decisions of the court below; and the motion for a new trial must be denied.

In this opinion the other Judges concurred.

New trial not to be granted.