SIEGFRIED HIGHSTONE v. MARY ANN BURDETTE, LOUIS MAR-
TIN, AND ANGELIQUE MARTIN.

*Written agreement—Generally conclusive upon the parties—Either party
may show that he was defrauded in the transaction—Stranger may con-
tradict to prevent its fraudulent operation upon his interests—Tenants in
common—Grantee of one in possession under warranty deed conveying
entire land—If he entered in good faith, believing that he owned entire
land, and retains peaceable possession for statutory period, co-tenants
ousted—Grantee of co-tenants—In ejectment may show that defendant
was informed of co-tenants' rights before purchase—Where sale made
through an interpreter, to whom such information was given, it must
be traced to defendant—Otherwise if contest is between the parties, and
the grantee furnished the interpreter.*

1. As a general rule, a *written* agreement concludes the parties, and, as
   between *them,* excludes *parol* evidence to vary or contradict its terms;
   yet either party may show by parol that he was defrauded in the
   transaction, and a stranger to the instrument is not estopped from
   contradicting it by parol evidence in order to prevent its fraudulent
   operation upon his interests.

2. Where *one* of four tenants in common assumed to and did convey the
   *entire* land, and the grantee of two of the other tenants brings eject-
   ment, and seeks to show that the defendant was informed of the out-
   standing title of plaintiff's grantors, at *time* of his purchase, by the
   interpreter through whom the sale was made, which defendant
   denies, claiming title to the *whole* land by adverse possession under
   his deed,—

   *Held,* that such evidence is competent, but, in order to affect the
   defendant, plaintiff must show that the interpreter communicated
   to defendant the statements claimed to have been made by his
   grantor.

   *Held,* further, that were the contest between defendant and his
   grantor, he would be concluded by the statements made to the inter-

preter, he having furnished him, and it would be unnecessary to show that they were communicated by such interpreter to defendant.

3. Where the grantee of *one* tenant in common receives a warranty deed of the *entire* land, and enters into possession in *good faith*, actually believing that he owns the land, such possession, if continued for the statutory period, will operate as an ouster of his grantor's co-tenants.

Error to Mackinac. (Steere, J.) Argued April 8, 1886. Decided April 22, 1886.

Ejectment. Defendants bring error. Reversed. The facts are stated in the opinion and reporter's note.

*Humphrey & Perkins,* for appellants:

The testimony of John Claremont regarding an alleged conversation with defendant Martin previous to the execution of his deed to Martin, changing the terms of the purchase as shown by the deed, was inadmissible.

The authorities are all one way on this question, and hold that the grantor is estopped from disputing the grant contained in his deed: 2 Wharton's Ev. 1050–4; *Jackson v. Foster,* 12 Johns. 488; *Jackson v. Roberts' Executors,* 11 Wend. 422; *Treadwell v. Bulkley,* 4 Day, 395; *Morse v. Shattuck,* 4 N. H. 229; *Jacobs v. Miller,* 50 Mich. 126; *Campau v. Lafferty,* Id. 117; *McEwan v. Ortman,* 34 Id. 325; *Smith v. Lock,* 18 Id. 56; *White v. Smith,* 37 Id. 291; *Parker v. Smith,* 17 Mass. 414; *Parker v. Farmingham,* 8 Metc. 267; *Shepard v. Shepard,* 36 Mich. 173.

*Charles R. Brown,* for plaintiff:

The testimony of John Claremont to show the *quo animo* of Martin at the time he made his purchase was admissible. The right to impeach the transaction by parol on the ground of fraud is unquestionable: *Match v. Hunt,* 38 Mich. 1–6.

There is no universal rule that parol evidence cannot be given to show the conversations and understanding of the parties to a deed. It has been allowed to convert an absolute deed into a mortgage: *Wadsworth v. Loranger,* Harrington's Chan. 113; *Emerson v. Atwater,* 7 Mich. 12; and to turn a contract of sale into a mortgage: *Swetland v. Swetland,* 3 Mich. 482; *Batty v. Snook,* 5 Id. 231.

The question at issue was the good faith and intent of Martin at the time of his purchase; and, assuming this as a material fact in the case, we submit it may be proved by any competent evidence, whether written or parol.

The true rule in this class of cases is, that whenever it becomes material, strangers may aver and prove the *real intention* as contra-distinguished from that *expressed in the deed.* Strangers to the written instrument are always allowed to adduce parol testimony to prevent a fraudulent operation of the instrument upon their rights, and may avail themselves of the truth, independent of any conventional arrangements of the parties. Though parties and privies are, in general, estopped from contradicting a written instrument by parol proof, the rule does not apply to strangers who have an interest in knowing the truth: *Krider v. Lafferty,* 1 Wharton, 303, 314; *Overseers of Berlin v. Overseers of Norwich,* 10 Johns. 229; *Brooks v. Maltbie,* 4 Stew. & Porter, 96–106; *Whitbeck v. Whitbeck,* 9 Cowen, 270; *Hynes' Rep'rs v. Campbell,* 6 T. B. Monroe, 292; *Johnson v. Blackman,* 11 Conn. 351–2–3.

Who ever denied the right of a creditor to show by parol that a conveyance executed by his debtor is in reality a mortgage, with a view of establishing that it was given to screen the property from being seized upon execution? Even where a deed, absolute on its face, was relied on as a circumstance to show that credit for certain repairs upon the premises was given to the grantee, *held,* that the latter might show by parol that the premises were his only in trust for a third person, who received the rents and profits, and that the party making the repairs knew this before he commenced suit: *Tripp v. Hathaway,* 15 Pick. 47.

CHAMPLIN, J. This case was before this Court, and was disposed of at the June term, 1884, and is reported in *Highstone v. Burdette,* 54 Mich. 329, to which reference is made for the main facts in the case. (See note, page 60.)

The only additional facts appearing in the record now before us consist of testimony which tended to show that plaintiff's grantors were aware of the fact that Louis Martin was in possession of the whole premises, and claiming to own the whole thereof, as early as 1863 or 1864. The testimony was given by Louis Claremont, who testified that he visited Martin in 1870, while he was residing upon the place, and

offered to sell him his interest in the property, and told him that he was an heir; that Martin replied that he had bought the property once from John, and did not need to buy it a second time. He testified: "I knew, before that time, for six or seven years before 1870, that Martin was on the place, and I knew four or five years before 1870 that he claimed the whole land."

He afterwards corrected this statement, and said that he knew that Martin was on the place from hearsay, but did not know he claimed to own it all; that his brother Alexander, four or five years before 1870, wrote him a letter telling him that Martin was living on the place, but did not say how he claimed it; and that he did not mean to say that he knew, four or five years before 1870, that Martin claimed the whole land, and that he did not know it until he came to St. Ignace in 1870.

This witness also testified that he had a talk with Mrs. Martin about the land in 1870; that she followed him to Mackinac Island, and offered him $10 to buy his right, which he refused. It appears that the sale of the land from John Claremont to Louis Martin was made through an interpreter, Claremont being unable to speak in the French language, and Martin unable to converse in English.

The plaintiff produced John Claremont as a witness, and in the course of his examination he was asked: "State the conversation between you at the time the bargain was made." This was objected to by the defendants' counsel on the ground that the same was irrelevant and incompetent, and that any previous conversation was merged in the written instrument. The court overruled the objection, and the witness testified that he told him that he had brothers, and that he only owned a quarter interest in the land; that nothing was said about getting deeds from the other brothers. It is contended that the ruling made, by which this testimony was admitted, was error; that it allowed the grantor in a deed to change the effect of his own deed by parol, and, in this instance, to change a sole estate in fee into a tenancy in common.

The general rule is that a written agreement concludes the parties to it, and, as between them, excludes all parol evidence to contradict, vary, or materially affect it; but to this rule there are exceptions, and a party to the instrument may show by parol that he was defrauded in the transaction; but a stranger to the instrument is not estopped from contradicting it by parol evidence in order to prevent a fraudulent operation of it upon his interests: *Johnson v. Blackman*, 11 Conn. 351; *Rex v. Scammonden*, 3 Dur. & E. Reports, 474; *King v. Laindon*, 8 Dur. & E. Reports, 379; *Reading v. Weston*, 8 Conn. 117.

In this case the plaintiff does not claim through John Claremont, nor were his grantors parties or privies to the deed made by him, but he is a stranger to the instrument, and he is not estopped from contradicting it by parol evidence in order to prevent the fraudulent operation of it upon his interests derived from the co-heirs of John Claremont. This being so, there is no reason why he may not show the fact by the evidence of the grantor in the deed; for, if the grantee was actually informed by John Claremont, at the time or preceding the execution of the deed, that he only owned one-fourth of the land, and that his brothers were absent, and their residence unknown, and Martin had the deed drawn to apparently convey the whole, with the purpose of ousting the absent heirs, his purpose would be fraudulent, and such purpose may be shown by parol.

The defendants insist that what was said by John Claremont was said to an interpreter, and, in order to affect the defendants, the plaintiff must show that Claremont's statements were communicated by the interpreter to Martin. But this the plaintiff did not propose to do, and Martin denied that any such statement was made to him; but, on the contrary, he says he was told that John Claremont owned the whole title, and would convey it by the deed to him.

If the contest was between Claremont and Martin, the latter having furnished the interpreter, he would be concluded by the statements made to his interpreter, and it would not

be necessary to show that such statements were communicated by the interpreter to him : *Camerlin v. Palmer Co.*, 10 Allen, 539. But, as before stated, the plaintiff is a stranger to the agreement between Claremont and Martin, and is seeking by this testimony to affect the good faith of Martin, and to show that he did not believe, when he entered into possession, that he was the owner of the whole title. When he does this, and seeks to affect the conscience of Martin, and taint his actions with bad faith amounting to fraud, it is incumbent on the plaintiff to go further, and show that the information claimed to have been given to the interpreter was communicated to Martin. Not proposing to do this, the testimony was inadmissible, and should have been rejected.

This error materially affected the case. It was the only evidence which tended to show any knowledge in the defendant's grantor, Martin, that he had in fact only secured an undivided one-fourth interest when he took possession, or upon which the jury could find that he did not enter into the possession of the whole actually believing that he owned the entire property.

Aside from this testimony, if the witnesses are believed, Martin entered into the land claiming the whole in good faith, and in such a way as to operate, if continued the statutory period, as an ouster of the other owners of the undivided interests as heirs of Francis Claremont. The record discloses that the claim of ouster and adverse possession has been consistently maintained from 1866 to the commencement of suit. The proof is, and the finding of the jury was, that Martin entered into possession under the claim of title contained in his deed from John Claremont in 1854 ; that in 1867 he conveyed the whole by warranty deed to his wife, Angelique Martin, and that she by warranty deed conveyed the whole premises in 1878 to Mary Ann Burdette, one of the defendants, who now claims to own the same. The possession of the whole has been in accordance with the deeds and record title, and has been peaceable, continuous, open, notorious, and exclusive.

Objections are made to the matter and form of the questions submitted to the jury by the plaintiff's counsel. The questions as propounded were objectionable, and should not have been submitted in that form, and some of them not at all; but, as there must be a new trial, and the matter is now regulated by statute, we need not specify the objections here. The finding of the jury was contradictory, and cannot sustain the general verdict rendered.

The judgment must be reversed, and a new trial granted. The defendants will recover costs.

The other Justices concurred.

Note.—The facts referred to are these:

1. October 12, 1830, a government patent was issued to the *heirs* of Francis Claremont, of the land in dispute, and in 1874 the plaintiff secured a warranty deed from two of the four heirs, of all their right, title, and interest in said land.

2. July 8, 1854, *one* of the heirs conveyed the *entire* land by a full covenant warranty deed to defendant Louis Martin, under which he entered into possession in 1866, and in May, 1867, conveyed the *whole* premises to his wife and co-defendant, Angelique Martin, by warranty deed, who in 1878, by *like* deed, conveyed the land to Mary Ann Burdette, the remaining defendant. In 1881, Louis and Angelique Martin made a *second* deed to defendant Burdette.

3. On the former trial (see 54 Mich. 331) it was conceded by the plaintiff that the defendants had been in the *sole* and peaceable possession of the land from the time of Martin's entry, in 1866, to that time; but the *acquiescence* by plaintiff in such possession was denied.