*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* JCP TRUST.

---

CONNIE LYNN McCAULEY, JAMES R. O'DOVERO, and JOSEPH A. O'DOVERO, as Trustees of the JCP TRUST,

Appellees,

v

PETER E. O'DOVERO, PETER J. O'DOVERO, and JEAN M. TEMPLE,

Appellants.

UNPUBLISHED
July 14, 2022

Nos.  352366; 354065; 356469
Marquette Probate Court
LC No.   17-337180-TV

---

*In re* JCP TRUST.

---

CONNIE LYNN McCAULEY, JAMES R. O'DOVERO, and JOSEPH A. O'DOVERO, as Trustees of the JCP TRUST,

Plaintiffs/Third-Party Defendants-Appellees,

and

LOIS O'DOVERO,

Intervening Plaintiff,

v

PETER E. O'DOVERO, PETER & LOIS, LLC, formerly known as O'DOVERO PROPERTIES, LLC, HUMBOLDT PROPERTIES, LLC, and O'DOVERO PROPERTIES,

Nos.  352367; 353970; 356467
Marquette Probate Court
LC No.   17-337181-CZ

                    Defendants/Third-Party Defendants-
                    Appellants,

and

T & C MARKETS MI, INC.,

                    Third-Party Plaintiff.

_____

Before:  SAWYER, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

These consolidated appeals[1] involve litigation concerning a family trust dispute and arise out of a probate proceeding and a related civil action.  The parties' primary dispute regarded the ownership of certain real properties situated in and around Marquette, Michigan ("the disputed properties").  In Docket Nos. 352366 and 352367, collectively,[2] appellants Peter E. O'Dovero (PEO), Peter J. O'Dovero (PJO), Jean M. Temple (Jean), Peter & Lois, LLC, formerly known as O'Dovero Properties, LLC, Humboldt Properties, LLC, and O'Dovero Properties ("appellants") appeal as of right the probate court's opinion and order, following a bench trial, in favor of trustees-appellees Connie Lynn McCauley ("Connie"), James R. O'Dovero ("James"), and Joseph A. O'Dovero ("Joseph") (collectively, the "trustees").  In Docket Nos. 353970 and 354065, appellants appeal as of right the probate court's order holding, among other things, that appellants were not entitled to an automatic stay pending the appeals in Docket Nos. 352366 and 352367.  In Docket Nos. 356467 and 356469 appellants appeal by leave granted[3] the probate court's order quashing certain nonparty subpoenas and refusing to rule, in postjudgment proceedings, on appellants' petition to remove the trustees for alleged breaches of their fiduciary duties.[4]

Finding no error warranting reversal, we affirm.

---

[1] *In re JCP Trust*, unpublished order of the Court of Appeals, entered February 14, 2020 (Docket Nos. 352366 and 352367); *JCP Trust v O'Dovero*, unpublished order of the Court of Appeals, entered August 5, 2020 (Docket Nos. 353970 and 354065); *JCP Trust v O'Dovero*, unpublished order of the Court of Appeals, entered May 3, 2021 (Docket Nos. 356467 and 356469).

[2] All of the listed appellants are not parties to each of the consolidated appeals at bar.  However, for ease of reference, this opinion will refer collectively to "appellants" unless otherwise indicated.

[3] *JCP Trust v O'Dovero*, unpublished order of the Court of Appeals, entered May 3, 2021 (Docket Nos. 356467 and 356469).

[4] Third-party plaintiff T & C Markets MI, Inc., which was permitted to intervene in the civil action, is not a party to the instant appeals.

## I. BACKGROUND

These cases arise out of a multimillion-dollar property dispute involving the JCP Trust—an irrevocable, *inter vivos* trust that was established in September 1991 by appellant PEO and his wife, intervening plaintiff Lois E. O'Dovero (Lois),[5] for the benefit of their nine living children: PJO, Jean, Connie, James, Joseph, Gerald D. O'Dovero, John A. O'Dovero, Jay D. O'Dovero, and Paul D. O'Dovero.[6] A dispute began when the trustees attempted to terminate PEO, doing business as O'Dovero Development, as the manager of numerous properties that were allegedly owned by the JCP Trust either legally, beneficially, or in both respects, because of suspicions that PEO was mismanaging the properties or attempting to divert money from the JCP Trust to himself. At the time of trial, legal title to most of the disputed properties either was or had been held by a "nominee" partnership, O'Dovero Properties, over which PEO was essentially the managing partner. Following a seven-day bench trial, the probate court ruled in the trustees' favor, holding that the JCP Trust held title (i.e., legal ownership), beneficial ownership, or both with regard to most of the buildings, lands, and rents associated with the 21 disputed properties. The probate court also granted the JCP Trust a constructive trust over the associated rights in the disputed properties, along with other relief. These consolidated appeals ensued.

### A. DISPUTED PROPERTIES

For ease of reference, the 21 disputed properties will be referred to as they were by the probate court, as follows:

- Econo Foods [or "Econofoods"] - 1401 O'Dovero Drive, Marquette, MI

- Sears - 1495 O'Dovero Drive, Marquette, MI

- MI Works- 1498 O'Dovero Drive, Marquette, MI

- GKC MQT - 1351 O'Dovero Drive, Marquette, MI

- Secretary of State - 1301 O'Dovero Drive, Marquette, MI

- New Fish & Wildlife - 3090 Wright Street, Marquette, MI

- Karr Medical - 3045 Wright Street, Marquette, MI

- SOB - 106 Coles Drive, Marquette, MI

- MRS - 290 Rublein, Marquette, MI

---

[5] Lois is not a party to any of these consolidated appeals, having died in October 2021.

[6] The children, aside from PJO, will be referred to by their first names in this opinion.

- Kroncich - 843 W. Washington Street, Marquette, MI

- Mini-Storage (Spears)- 841-843 W. Washington Street, Marquette, MI

- Ridge Street Suites (RSS) - 1009 W. Ridge Street, Marquette, MI 49855

- Peak Fitness - 625 County Road, Marquette, MI

- M&G Party Store - 235 E. Hwy US 41, Negaunee, MI

- Mather Building - 536 Mather Avenue, Ishpeming, MI

- Michigamme Land

- Humboldt Properties

- 230 Rublein, Marquette, MI

- 237 E. Hwy US 41, Negaunee, MI

- Negaunee Vacant Land I

- Negaunee Vacant Land II

## B. PARTIES' DISPUTE AND COURT PROCEEDINGS

In May 2017, the trustees initiated the trust proceeding (LC No. 17-337180-TV) by filing a petition seeking a declaration of the JCP Trust's rights in the disputed properties. In June 2017, PEO filed a petition to terminate the trust. In August 2017, the trustees initiated the related civil action (LC No. 17-337181-CZ) by filing a complaint which they subsequently amended. In their first amended complaint, the trustees sought various forms of relief, including (1) a determination of the JCP Trust's rights in the disputed properties pursuant to MCL 600.2932; (2) an order quieting title to those properties in the JCP Trust; (3) various forms of injunctive relief; (4) an accounting from the pertinent appellants; (5) imposition of a constructive trust; and (6) disgorgement of any inequitable gains by the pertinent appellants. In April 2018, appellants Jean and PJO filed a petition to remove and surcharge the trustees for alleged breaches of various fiduciary duties. In July 2018, the civil action and probate proceeding were consolidated at the stipulation of the parties.

## C. JCP TRUST AND PARTNERSHIP AGREEMENT

In this matter, the parties disputed the relevance, interpretation, and application of the JCP Trust, the partnership agreement forming O'Dovero Properties, and related amendments.

## 1. JCP TRUST

The JCP Trust was drafted by attorney Thomas Vicary and established in September 1991 by appellant PEO and Lois.  The original JCP Trust agreement provides, in pertinent part:

JCP Trust
Dated: September 19, 1991

TRUST AGREEMENT made by [PEO] and LOIS . . . as "Grantors" and CONNIE . . . , JAMES . . . , and GERALD . . . as "Trustees." . . . . The terms Grantors' "child," "children" and "issue" shall mean [the grantors' then-living] children, any other children born to the Grantors, and their issue, but shall not include adopted children, or their issue.

*The principal purpose of the trust is to receive gifts from the Grantors for the benefit of the Grantors' family as herein provided*.

The Grantors realize that the right may be reserved to revoke or amend this trust, but *that right is expressly waived and this trust is not subject to alteration, amendment or revocation by the Grantors.  Provided that all of the Grantors' then living children by written instrument delivered to the Trustees may amend this agreement in whole or in part, so long as no amendment creates any beneficial rights in the Grantors, and the Grantors, or the surviving Grantor, consent in writing to such amendment*.

## 1. TRUST PROPERTY

The Grantors hereby transfer to the Trustees the sum of $10.00, receipt of which is hereby acknowledged, as the original trust estate.  Additional property may be added to the trust estate at any time by any person . . . . All such original and additional property is referred to herein collectively as the "trust estate."

No individual Trustee shall participate in the exercise of any tax election which affects his or her interests or the interests of any person to whom he or she is legally obligated . . . .  In all other respects, all actions of the Trustees shall be by majority agreement. . . .

\* \* \*

## 2. FAMILY TRUST

The Trustees shall hold, manage and distribute the net income and principal of the Family Trust as follows: . . . .

\* \* \*

## 4. SPECIAL LIMITATIONS AND POWERS

(a)  Limitation on Powers – Notwithstanding anything herein contained to the contrary, except clause (b), the following limitations on powers shall apply only during the lifetimes of the Grantors or either of them:

(1) *No powers enumerated herein or accorded to Trustees generally pursuant to law shall be construed to enable the Granters, the Trustees, or any other person to purchase; exchange, or otherwise deal with or dispose of all or any part of the principal or income of the trust for less than an adequate consideration in money or money's worth, or to enable the Grantors to borrow all or any part of the corpus or income of the trust, directly or indirectly, without adequate interest or security.*

(2) *No person, other than the Trustees acting in a fiduciary capacity, shall . . . reacquire or exchange any property of the trust by substituting other property.* [Emphasis added.]

In March 1996, PEO's and Lois's living children executed a first amendment of the JCP Trust, with the signed consent of the grantors, PEO and Lois.  The first amendment did not alter any of the provisions that are pertinent here.  In March 2000, PEO and Lois's living children executed a second amendment of the JCP Trust, again with the signed consent of the grantors, PEO and Lois.  As pertinent here, the second amendment provided:

1.  The third paragraph of the preamble or recitals at the top of the first page of the trust instrument is amended by striking from the end of the last sentence of that paragraph the words: "and the Grantors, or the surviving Grantor, consent in writing to such amendment."

2.  Except as hereby amended, the Grantors' living children do not intend to further amend the Trust Agreement.

Multiple witnesses agreed that, sometime in 2000, the trustees of the JCP Trust *officially* hired PEO, doing business as O'Dovero Development, as a property manager for the trust's "portfolio of real estate," paying him a management fee based on a percentage of the "gross rental income" received from the managed properties.

## 2. PARTNERSHIP AGREEMENT AND ASSIGNMENT

In June 1992, Vicary drafted a partnership agreement forming O'Dovero Properties, which he intended to act as a "nominee" title holder for properties that were beneficially owned by the JCP Trust or the revocable grantor trusts associated with PEO and Lois.  The original partners of O'Dovero Properties were Gerald, James, and PEO.  In pertinent part, the original executed partnership agreement provided:

WHEREAS, the parties hereto desire to form a general partnership for the purposes and upon the terms and conditions hereinafter stated:

NOW, THEREFORE, the parties hereto mutually agree as follows:

## ARTICLE I

1. The name of the partnership shall be O'DOVERO PROPERTIES.

\* \* \*

3. The *sole* purpose and business of the partnership shall be to register and hold in the firm name and otherwise deal with, such property *and only such property* of the nature described in Article II of this Agreement as the partnership may be requested so to do by the trustee or trustees of the PETER E. and LOIS A. O'DOVERO Trust Agreement, acting in a fiduciary capacity, *and/or the trustees of the JCP Trust dated September 19, 1992, acting in a fiduciary capacity.*

\* \* \*

6. The partnership shall not have any capital.

## ARTICLE II

The property intended to be covered by the terms of this Agreement and herein from time to time referred to, consists of:

1. Fully paid and non-assessable stocks;

2. Bonds, notes, real estate mortgages or other securities, except certificates of beneficial interest in so-called Common Law or Massachusetts Trusts;

3. Real estate . . . or other property of every kind or form whatsoever, except that property expressly excluded above, or any interest therein howsoever evidenced; together with any increment, rights or additions to such property; moneys and properties arising out of the sale, mortgage, pledge or conversion thereof or substitution therefore; and any and all dividends, interest, rents or other income arising therefrom, or from any changed condition thereof; all of which is hereinafter referred to as "The Property". *Such property, however, shall be limited to property in which the trustee or trustees of the PETER E. and LOIS A. 0'DOVERO Trust Agreement or the JCP Trust Agreement has an interest in a fiduciary capacity, and shall not include any property owned by the trustees in their individual capacity.*

## ARTICLE III

In order to carry out the purposes and business of the partnership, the partnership shall enter into agreement with the trustees upon such terms and conditions as may be mutually agreed upon and in which, among other things, provide that:

1. *Upon and only upon the instructions of the trustees, acting in a fiduciary capacity*, the partnership shall:

(a) Purchase, register and hold such property in the firm name;

(b) Sell at public or private sale, exchange, lease for any period of time, mortgage or pledge any such property;

(c) Assign, transfer, deliver, convey, collect, alter and change any of such property and compromise and adjust any matters with respect thereto;

(d) Execute, acknowledge and deliver all proper assignments, bills of sale, receipts, transfers, deeds, conveyances, mortgages, releases, powers of attorney, dividend orders, proxies, waivers, declarations of trust, disclaimers, or other instruments, general or specific;

(e) Endorse and deliver all checks, drafts, and orders for the payment of money that may be received by the partnership or by any member thereof, respecting or in any way to such property; or

(f) Do all other acts necessary or desirable to carry out the terms and conditions of such agreement.

\* \* \*

3. *The partnership, as such, shall have no beneficial interest in such property, any such interest being expressly and irrevocably waived and disclaimed. No member of the partnership shall have or acquire any personal or beneficial interest in such property by virtue of his being a member of the partnership, but nothing herein contained shall prevent any member from having and retaining such personal or beneficial interest in such property as he would be entitled to if not a member.*

4. Neither the partnership nor any member thereof shall exercise any power conferred upon the partnership under the terms of said agreement for the individual account of the firm *or for the account of anyone other than the said trustee in their fiduciary capacity*.

\* \* \*

6. The partnership shall keep such records, reports, and accounts in accordance with such system and in general form *as the trustees may instruct*. The partnership *shall* cause to be shown on its records such information and explanations respecting each item of property as shall, *to the extent instructed by the trustees*, show the trust ownership or beneficial ownership of all stocks, bonds, notes, or other securities or property held and the facts respecting the partnership's holdings.

ARTICLE IV

No partner shall at any time sign the partnership name for the purpose of creating any indebtedness, except as permitted in said Agreement.

None of the partners during the continuation of the partnership shall assume any liability for any other person, firm or corporation, either by endorsing any instrument or becoming guarantor or surety for any obligation or otherwise. [Emphasis added.]

In May 1994, a first amendment of the O'Dovero Properties partnership agreement was signed by the trustees of the JCP Trust—but not by all of its beneficiaries—and that amendment was also signed by all of the O'Dovero Properties partners. The first amendment to the partnership agreement provided, in pertinent part:

O'DOVERO PROPERTIES, a Michigan Co-Partnership, by unanimous agreement of the partners, hereby consent to the following amendment:

* * *

2. As of the effective date of this Amendment, *any action taken in the partnership shall require the authorization and approval of any two of the three partners, without necessity of obtaining the consent of the third partner*. Third parties in dealing with the partnership are entitled to rely on any two of the three partners, namely any two of [PEO], JOSEPH . . . or JAMES . . . , as proper and lawful action of the partnership with full authority of the partnership.

3. As of the effective date, the partners shall have full authority to enter into *any* transactions governing the partnership property including, *but not limited to*, any of the annunciated powers under Article III of the Partnership Agreement, *without any requirement of authorization or instructions from the trustees* of the PETER E. and LOIS A. O'DOVERO Trust Agreement *or the JCP Trust*. Any reference in the Partnership Agreement requiring such authorization or consent by the trustees for any such action, is hereby expressly deleted as to any transactions from and after the effective date of this Agreement. The trustees of the foregoing trusts execute this amendment evidencing their consent to this Amendment of the Partnership Agreement.

* * *

5. As of the effective date GERALD . . . hereby resigns as Partner. JOSEPH . . . hereby . . . becomes a successor partner, succeeding GERALD . . . , and he agrees to be bound by the Partnership Agreement as a fully substituted partner. [Emphasis added.]

In October 2006, a second amendment of the O'Dovero Properties partnership agreement, which indicated that it had retroactive effect as of June 27, 2005, was signed by the trustees of the JCP

Trust—but not all of its beneficiaries—and by all of the partners of O'Dovero Properties.  As relevant here, the second amendment to the partnership agreement provided:

O'DOVERO PROPERTIES, a Michigan Co-Partnership, by unanimous agreement of the partners, hereby consent to the following amendment:

\* \* \*

2. As of the effective date of this Amendment, *any* action taken in the partnership shall require the authorization and approval of *only* [PEO], without necessity of obtaining the consent of the other two partners.  Third parties in dealing with the partnership are entitled to rely on the single signature of [PEO], as proper and lawful action of the partnership with full authority of the partnership.  Any action taken in the partnership by partners *other than* [PEO] shall require the authorization and approval of any two of the three partners.

\* \* \*

4. As of the effective date of this amendment, the Partnership will include the Peter E. O'Dovero Living Trust 3-19-96 amended and restated 6-27-05, Lois A. O'Dovero Living Trust 3-19-96 amended and restated 6-27-05, *[PEO] and Lois . . . , as individuals and jointly*, and JCP Trust.

5. This amendment restates that the partners shall have full authority to enter into *any* transactions governing the partnership property including, *but not limited to*, any of the annunciated powers under Article III of the Partnership Agreement, *without any requirement of authorization or instructions from the trustees* of the Peter E. O'Dovero Living Trust, Lois A. O'Dovero Living Trust *or JCP Trust*.  The trustees of the foregoing trusts execute this amendment evidencing their consent to this Amendment of the Partnership Agreement.

6. The trustees of the foregoing trusts and the individual signers further execute this Agreement to evidence their consent and approval to *any and all actions of the partners taken with respect to property titled in the partnership from the original date of the partnership, through the date of this Amendment*, including any actions of the partners in the acquisition of, sale, mortgage or leasing of partnership properties, both real or personal.  [Emphasis added.]

### 3.  ASSIGNMENT

In June 2007, PEO executed a document that was captioned as an "ASSIGNMENT OF PARTNERSHIP INTEREST AND OTHER INTERESTS IN O'DOVERO PROPERTIES" (the "2007 assignment").  It provided, in pertinent part:

The undersigned [i.e., PEO], being a partner in O'Dovero Properties, a Michigan Co-Partnership, hereby transfers and assigns to the Peter E. O'Dovero Living Trust U.A.D. 3/19/96 and as amended and restated on 6/27/05 (the "Assignee" herein) all rights and interest of the undersigned as a partner, and all

-10-

other rights the undersigned may have in any partnership property independent of his status as a partner, in O'Dovero Properties, a Michigan Co-Partnership.

According to PEO, he intended the 2007 assignment to transfer "[a]ll the interest" over the properties previously held by O'Dovero Properties to PEO's revocable grantor trust. PEO indicated that he had made "[a]ll the decisions" concerning such properties, including the initial decisions to "purchase[] them" and "turn[] them over to JCP."

## D. PROBATE COURT RULING

Ultimately, this matter proceeded to a seven-day bench trial. The probate court heard testimony from numerous witnesses, including PEO, Lois, Attorney Vicary, Certified Public Accountant (CPA) Daniel Bianchi, CPA Patrick Gregory (Gregory), and Attorney John Sharp (Sharp), among others.[7] On October 14, 2019, the probate court issued a 106-page opinion and order, primarily ruling in favor of the trustees. In its opinion, the probate court, in relevant part, (1) concluded that it had subject-matter jurisdiction over both of the consolidated matters—the termination of a trust in File No. 17-337180-TV, and the declaration of trust rights in File No. 17-337181-CZ; (2) concluded that the JCP trust was an irrevocable trust; (3) denied appellants' petition to terminate the JCP Trust; (4) concluded that O'Dovero Properties held "bare legal title" to the 21 disputed properties as nominee, while the JCP Trust had beneficial ownership of the properties; and (5) imposed a constructive trust to hold the 21 JCP properties. On January 22, 2020, appellants claimed their appeals in Docket Nos. 352366 and 352367 regarding the probate court's October 14, 2019 opinion and order.

## E. POSTTRIAL PROCEEDINGS

Appellants subsequently filed several posttrial motions, including a motion for reconsideration, relief from judgment, or a new trial. Following a hearing on the matter, the probate court denied appellants' motion for reconsideration, relief from judgment, or a new trial, reasoning in part that the motion for reconsideration, which was filed pursuant to MCR 2.119(F), was improper under the plain language of that rule because appellants were seeking reconsideration of a ruling following *trial*, not a decision on a "motion."

Without the court compelling him to do so, PEO posted a bond (pending appeal) with the probate court. Appellants also filed a proposed order staying the lower court actions pending the appeals in Docket Nos. 352366 and 352367. Appellants further argued that this matter was subject to an automatic stay pending appeal pursuant to MCR 5.802 and MCL 600.867. The probate court held that appellants were not entitled to an *automatic* stay, and the court refused to rule whether appellants were entitled to a *discretionary* stay under other provisions of law, reasoning that the matter was not properly before the court because no motion for such a stay had been filed. The probate court further ruled that a bond on appeal was "not appropriate in this case," and released

---

[7] Gregory and Sharp were both qualified as experts.

-11-

the bond previously posted by PEO. Appellants now appeal that decision in Docket Nos. 353970 and 354065.

In May and June 2020, appellants served two nonparty subpoenas on banks with which the JCP Trust holds accounts. The trustees filed a motion to quash the nonparty subpoenas, arguing that they were improperly issued because the probate court lacked continuing jurisdiction over this case, given the several appeals already pending in this Court at that time. Appellants filed a motion seeking to compel the nonparties' compliance with the contested subpoenas. Appellants argued that the subpoenas were proper discovery because the petition remained pending with the probate court, asserting that the probate court had never ruled on the petition to remove the trustees for breach of fiduciary duties, and that the parties had agreed (at a pretrial conference in chambers) to bifurcate the property-dispute trial from the proceedings related to the petition to remove the trustees. Following a hearing on the matter, the probate court granted the trustees' motion to quash the nonparty subpoenas and denied appellants' motion to compel compliance with them. In pertinent part, the probate court reasoned that the petition to remove the trustees had been filed on April 27, 2018 (i.e., before the parties stipulated to consolidate the civil action and the probate proceeding "for all further proceedings, including trial"), that appellants had failed to address that petition in their proposed findings of fact and conclusions of law following trial, that the probate court had already entered its final order following trial, that the petition to remove the trustees was therefore no longer "pending" before the probate court, and that, as such, any further discovery was not permissible. Appellants moved for reconsideration of that decision pursuant to MCR 2.604 and MCR 2.611, which the probate court denied.

Appellants attempted to claim an appeal as of right from the probate court's order quashing the nonparty subpoenas. However, this Court dismissed those claims of appeal sua sponte for lack of jurisdiction. *In re JCP Trust*, unpublished order of the Court of Appeals, entered February 9, 2021 (Docket Nos. 356191 and 356202). Appellants then filed delayed applications for leave to appeal that same order, and this Court granted appellants leave to appeal. *JCP Trust v O'Dovero*, unpublished order of the Court of Appeals, entered May 3, 2021 (Docket Nos. 356467 and 356469).

Additional facts will be included as necessary below.

## II. SUBJECT MATTER JURISDICTION OF PROBATE COURT

Appellants argue that the probate court erred by concluding it had subject-matter jurisdiction over the trust proceeding and civil action. We disagree.

This Court reviews de novo whether a trial court has subject-matter jurisdiction over a given case. *Forest Hills Coop v Ann Arbor*, 305 Mich App 572, 615; 854 NW2d 172 (2014). The limits of a probate court's jurisdiction are statutorily defined, *In re Geror*, 286 Mich App 132, 133; 779 NW2d 316 (2009). We also review de novo the proper interpretation and application of statutes. *In re Estate of Klein*, 316 Mich App 329, 333; 891 NW2d 544 (2016).

As this Court explained in *In re Complaint of Pelland*, 254 Mich App 675, 682; 658 NW2d 849 (2003):

Subject-matter jurisdiction concerns a body's abstract power to hear a case of the kind or character of the one pending, and is not dependent on the particular facts of the case. Subject-matter jurisdiction is determined only by reference to the allegations listed in the complaint. If it is apparent from the allegations that the matter alleged is within the class of cases over which the body has power to act, then subject-matter jurisdiction exists. [Citations omitted.]

"Probate courts are courts of limited jurisdiction," with the scope of their jurisdiction "defined entirely by statute." *In re Wirsing*, 456 Mich 467, 472; 573 NW2d 51 (1998). In pertinent part, MCL 700.1302 provides:

The [probate[8]] court has *exclusive* legal and equitable jurisdiction of all of the following:

* * *

(b) A proceeding that concerns the validity, internal affairs, or settlement of a trust; the administration, distribution, modification, reformation, or termination of a trust; *or the declaration of rights that involve a trust, trustee, or trust beneficiary*, including, but not limited to, proceedings to do all of the following:

* * *

(*v*) Determine a question that arises in the administration or distribution of a trust, including a question of construction of a will or trust.

(*vi*) Instruct a trustee and determine relative to a trustee the existence or nonexistence of an immunity, power, privilege, duty, or right.

* * *

(*viii*) Determine an action or proceeding that involves settlement of an irrevocable trust. [Emphasis added.]

Additionally, MCL 700.1303 provides, in relevant part:

(1) In addition to the jurisdiction conferred by section 1302 and other laws, the court has *concurrent* legal and equitable jurisdiction to do all of the following in regard to an estate of a decedent . . . *or trust*:

(a) Determine a property right or interest.

* * *

---

[8] See MCL 700.1103(j) (defining "court" as "the probate court or, when applicable, the family division of circuit court").

-13-

(g) Impose a constructive trust.

(h) Hear and decide a claim by or against a fiduciary or trustee for the return of property.

(i) Hear and decide a contract proceeding or action by or against an estate, trust, or ward.

\* \* \*

(3) The underlying purpose and policy of this section is to simplify the disposition of an action or proceeding involving a . . . trust estate by consolidating the probate and other related actions or proceedings in the probate court.

Under the plain meaning expressed by the above provisions, the probate court clearly had subject-matter jurisdiction over both of the consolidated cases at issue here. On the face of the pertinent petition in the trust proceeding and the complaint in the civil action, the trustees requested a declaration of the JCP Trust's rights with regard to the disputed properties, a return of those properties to the trust estate, and the imposition of a constructive trust over the properties. Therefore, at a minimum, the probate court had concurrent jurisdiction under MCL 700.1303(1)— if not exclusive jurisdiction under MCL 700.1302.

III. FINDINGS AND CONCLUSIONS OF PROBATE COURT

Next, appellants argue that the probate court erred concerning its findings and conclusions following the bench trial, which involved, in part, the application of the Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.* We perceive no error or clear error warranting reversal.

A. STANDARD OF REVIEW

"The standard of review on appeal in cases where a probate court sits without a jury is whether the court's findings are clearly erroneous." *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003).[9]

---

[9] To the extent that appellants attempt to challenge the probate court's factual findings under the "great weight of the evidence" standard, their argument is misplaced. Although the "great weight of the evidence" standard is applicable to factual findings rendered in child custody matters, see MCL 722.28; *McIntosh v McIntosh*, 282 Mich App 471, 474; 768 NW2d 325 (2009), in other civil matters tried without a jury, including probate matters, the applicable standard is the "clearly erroneous" standard, see *Tuttle v Dep't of State Hwys*, 397 Mich 44, 46; 243 NW2d 244 (1976) (adopting the clear error standard for bench trials and rejecting the lower court's "unduly restrictive" approach of applying the great-weight-of-the-evidence standard to a trial court's verdict); *In re Bennett Estate*, 255 Mich App at 549.

-14-

A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding. We defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court. [*Lewis Estate v Rosebrook*, 329 Mich App 85, 93; 941 NW2d 74 (2019) (quotation marks and citations omitted.)]

The probate court's conclusions of law are reviewed de novo, *Trader v Comerica Bank*, 293 Mich App 210, 215; 809 NW2d 429 (2011), including "whether the trial court properly applied equitable principles," *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 443; 889 NW2d 759 (2016). Additionally, we review de novo issues of statutory interpretation, *Lewis Estate*, 329 Mich App at 93, matters of contractual interpretation, *Trader*, 293 Mich App at 215, "the proper interpretation of the language in a deed," *In re Rudell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009), "the ultimate disposition reached in a quiet-title action, which is equitable in nature," *id*. at 402, and the proper interpretation of a trust agreement, *In re Herbert Trust*, 303 Mich App 456, 458; 844 NW2d 163 (2013).

## B. LEGAL DOCUMENTS

Appellants argue that the probate court erred, in several respects, with regard to its construction and application of the pertinent legal documents in this case—particularly the JCP Trust, the O'Dovero Properties partnership agreement, and the amendments to those documents. We disagree.

## 1. LEGAL PRINCIPALS

As summarized in *In re Reisman Estate*, 266 Mich App 522, 527; 702 NW2d 658 (2005), the following principles of construction apply when interpreting wills or trust documents:

A fundamental precept which governs the judicial review of wills is that the intent of the testator is to be carried out as nearly as possible. Where there is no patent or latent ambiguity in the provisions of a will, the intention to be ascribed to the testator is that intention demonstrated in the will's plain language. Furthermore, a court may not construe a clear and unambiguous will in such a way as to rewrite it, and, where possible, each word should be given meaning. The rules of construction applicable to wills also apply to the interpretation of trust documents. [Quotation marks, citations, and alteration omitted.].

Similarly, partnership agreements are also interpreted using ordinary principles of contractual interpretation. See *WNC Housing LP v Shelborne Dev Co LLC*, 500 Mich 928; 889 NW2d 485 (2017). As discussed in *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016):

Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. When interpreting a contract, our primary obligation is to give effect to the parties' intention at the time they

entered into the contract. To do so, we examine the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written[.] [Quotation marks and citations omitted.]

If a term or phrase is contractually defined, then that definition controls. *Twichel v MIC Gen Ins Corp*, 469 Mich 524, 534; 676 NW2d 616 (2004). "Where a term is not defined . . . , it is accorded its commonly understood meaning," *id*., and "[a] dictionary may be consulted to ascertain the plain and ordinary meaning of words or phrases used in the contract." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015).

"[C]ontracts must be read as a whole," *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 447; 886 NW2d 445 (2015), giving "effect to every word, phrase, and clause," while taking pains to "avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). "[W]here one writing refers to another, the two writings are to be construed together," *Foremost Ins Co v Allstate Ins Co*, 439 Mich 378, 389 n 27; 486 NW2d 600 (1992), "including any modifications agreed to by the parties" in subsequent writings, *Neville v Neville*, 295 Mich App 460, 469-470; 812 NW2d 816 (2012); see also *In re Koch Estate*, 322 Mich App 383, 399; 912 NW2d 205 (2017) ("When a contract incorporates a writing by reference, it becomes part of the contract, and courts must construe the two documents as a whole.").

Contractual ambiguities can be either patent or latent. *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010). "A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning," *Barton-Spencer v Farm Bureau Life Ins Co of Mich*, 500 Mich 32, 40; 892 NW2d 794 (2017), or "two provisions . . . irreconcilably conflict with each other," *Klapp*, 468 Mich at 467. Contrastingly, "[a] latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings." *Shay*, 487 Mich at 668 (quotation marks and citations omitted).

## 2. ANALYSIS

Appellants argue that the probate court erred by failing to make a threshold conclusion as to "whether the controlling documents and amendments were clear or ambiguous." Appellants appear to argue that the probate court erred by considering extrinsic evidence concerning the *intended* meaning of the pertinent documents without first finding that those documents were either patently or latently ambiguous. Appellants also argue that the probate court erred by misconstruing the plain language of the O'Dovero Properties partnership agreement, as amended, in various respects. Appellants additionally assert that whether or not the trust was irrevocable is "irrelevant" because the partnership agreement "absolutely frustrat[ed] the purpose of the trust . . . ." Essentially, appellants assert that the partnership agreement and its amendments are the controlling documents of this dispute. We are unpersuaded.

As an initial matter, the probate court concluded that the JCP Trust was an irrevocable trust based on the clear and unambiguous language of the trust document. Nonetheless, the probate court received a great deal of parol evidence, largely in the form of witness testimony concerning

the underlying intent of those who executed the JCP Trust, the O'Dovero Properties partnership agreement, the amendments to those documents, and the various deeds at issue in this case. We conclude that it was altogether proper for the probate court to consider such evidence in this case.

First, although parol evidence "may not be used to identify a *patent* ambiguity," it is properly considered in deciding whether "a *latent* ambiguity exists." *Shay*, 487 Mich at 667 (emphasis added); see also *id*. at 669 ("This Court has applied the latent-ambiguity doctrine when extrinsic evidence demonstrates that there is an ambiguity concerning *the identity of the intended beneficiary* of a promise in a contract.") (emphasis added). Therefore, it was proper for the probate court to consider parol evidence as a means of identifying any potential latent ambiguities. Secondly, not all of the parties to these consolidated proceedings were signatories of the relevant documents in this case, and it has long been settled that the parol-evidence rule operates only against the parties to a contract, not strangers to it. See, e.g., *Highstone v Burdette*, 61 Mich 54, 58; 27 NW 852 (1886) ("a stranger to the instrument is not estopped from contradicting it by parol evidence in order to prevent a fraudulent operation of it upon his interests"); *Denha v Jacob*, 179 Mich App 545, 550; 446 NW2d 303 (1989) ("We agree with the majority of courts which hold that the parol evidence rule cannot be invoked either by or against a stranger to the contract."). Lastly, this case involved a request for an equitable trust, which is also known as a "constructive" trust, *Allard v Allard (On Remand)*, 318 Mich App 583, 597; 899 NW2d 420 (2017), and parol evidence is properly considered in determining whether to grant a constructive trust. *Kren v Rubin*, 338 Mich 288, 295; 61 NW2d 9 (1953). Therefore, the probate court did not err by considering parol evidence in this case.

Regarding the O'Dovero Properties partnership agreement, appellants first argue that the probate court misconstrued the following phrase, which appears in Article III, § 3, of the original partnership agreement:

> No member of the partnership shall have or acquire any personal or beneficial interest in such property by virtue of his being a member of the partnership, *but nothing herein contained shall prevent any member from having and retaining such personal or beneficial interest in such property as he would be entitled to if not a member*. [Emphasis added.]

Specifically, appellants argue that the probate court committed "clear error" by failing to recognize that, pursuant to the above-emphasized language, it was permissible for PEO to retain his personal and beneficial interests in the disputed properties *after* they were conveyed to O'Dovero Properties. Appellants also argue that the probate court failed to recognize that, under the second and third amendments to the partnership agreement, O'Dovero Properties was authorized to hold title to the disputed properties as nominee for several entities—the JCP Trust, Lois's revocable grantor trust, PEO's revocable grantor trust, Lois individually, and PEO individually—and PEO was authorized to unilaterally decide to which of those entities the beneficial interest in any given property would be assigned. Appellants specifically argue that the probate court ignored the following language from the second amendment to the partnership agreement:

> 2. As of the effective date of this Amendment, *any* action taken in the partnership shall require the authorization and approval of *only* [PEO], without necessity of obtaining the consent of the other two partners. Third parties in dealing

-17-

with the partnership are entitled to rely on the single signature of [PEO], as proper and lawful action of the partnership with full authority of the partnership. Any action taken in the partnership by partners *other than* [PEO] shall require the authorization and approval of any two of the three partners.

\* \* \*

4. As of the effective date of this amendment, the Partnership will include the Peter E. O'Dovero Living Trust 3-19-96 amended and restated 6-27-05, Lois A. O'Dovero Living Trust 3-19-96 amended and restated 6-27-05, Peter E. O'Dovero and Lois A. O'Dovero, as individuals and jointly, and the JCP trusts.

Notwithstanding the amendments, appellants ignore the probate court's finding that the disputed properties had been conveyed to O'Dovero Properties only as a nominee titleholder *for the JCP Trust*, not for PEO or his revocable grantor trust. By nature, completed *inter vivos* gifts are "not subject to revocation." *Kwiatkowski v Antonecki*, 329 Mich 32, 37; 44 NW2d 856 (1950). As discussed below, we perceive no clear error in the probate court's finding that the relevant disputed properties had, in fact, been gifted to the JCP Trust before PEO attempted to unilaterally assign them to his revocable grantor trust. In other words, PEO did not retain any beneficial interest in such properties at the time of the 2007 assignment.

Moreover, nothing in the amendments to the original partnership agreement altered the language in Article III, § 3, of the original agreement stating that the partners could not "acquire any personal or beneficial interest in" property held by O'Dovero Properties "by virtue of . . . being a member of the partnership[.]" The probate court correctly interpreted and applied that language, holding that after PEO had gifted the disputed properties to the JCP Trust, he could not subsequently regain a beneficial interest in them by virtue of his membership in the O'Dovero Properties partnership. We find no error concerning the probate court's construction and application of the O'Dovero Properties partnership agreement and its amendments.

## C. COMPLETED GIFTS

Next, appellants argue that the probate court "did not properly apply the law regarding what constitutes a gift in reaching its conclusion" regarding several of the disputed properties. We disagree.

"It may be stated generally that the three elements necessary to constitute a valid gift are these: (1) that the donor must possess the intent to pass gratuitously title to the donee; (2) that actual or constructive delivery be made; and (3) that the donee accept the gift." *Osius v Dingell*, 375 Mich 605, 611; 134 NW2d 657 (1965). Whether a completed *inter vivos* gift was made is generally a question "of fact, the determination of which must rest on the credibility of witnesses." *Ruch v First Nat Bank of Three Rivers*, 326 Mich 52, 60; 39 NW2d 240 (1949).

Once an *inter vivos* gift is made, it is "not subject to revocation." *Kwiatkowski*, 329 Mich at 37; accord *Grand Rapids Trust Co v Bellows*, 224 Mich 504, 509; 195 NW 66 (1923) (holding that one of the distinguishing features of *inter vivos* gifts is that they are "not liable to revocation by the donor"). No exchange of consideration is necessary, given that a "gift" is gratuitous by its

very nature. *Buell v Orion State Bank*, 327 Mich 43, 55; 41 NW2d 472 (1950). Moreover, "the donee is presumed to have accepted the gift where such is beneficial," *Osius*, 375 Mich at 611, and this presumption is even stronger in cases involving gifts of realty, given that interests in real estate are generally beneficial to those who own them, see, e.g., *Defreese v Lake*, 109 Mich 415, 421-427; 67 NW 505 (1896).

"Whether a party has acted with donative intent presents a question of fact." *In re Rudell Estate*, 286 Mich App at 404. Donative intent "need not be expressed in any particular form" and "may . . . be proven through oral testimony." *Id*. at 405-406 (quotation marks and citations omitted). "It requires less positive and unequivocal testimony to establish the delivery of a gift from a father to his children than it does between persons who are not related, and in cases where there is no suggestion of fraud or undue influence very slight evidence will suffice." *Love v Francis*, 63 Mich 181, 191; 29 NW 843 (1886); accord *Ruch*, 326 Mich at 60 ("a gift from a parent to a child is more easily proved than in instances where such a transaction is between persons not so related."). Additionally, while "the presence of a filed gift tax return is not *conclusive* evidence that a gift was made," such a return may serve as evidence "tend[ing] to show that a gift has been made . . . ." *In re Rudell Estate*, 286 Mich App at 405 (emphasis added).

Appellants contend that there was necessarily "no acceptance or delivery" of the disputed properties[10] here because "no title was ever passed." Appellants further contend that any properties that were conveyed to O'Dovero Properties as nominee titleholder, rather than the JCP Trust, do not qualify as having been either accepted by or delivered to the JCP Trust. Although delivery of gifted property can be "either actual or constructive," *Love*, 63 Mich at 190, "[i]t is essential that *title* pass to the donee," *Osius*, 375 Mich at 611 (emphasis added). However, a gift need not "be delivered to the person intended *directly*. It may be delivered to some person *for him, or to a trustee for that purpose*, and in all cases such a disposition of it must be made in favor of the donee as effectuates the object and places the *jus disponendi* beyond the power of the donor to recall." *Love*, 63 Mich at 190.

After considering the extensive evidence before it at length, the probate court found that the transfers of each of the disputed properties, either to the JCP Trust or to O'Dovero Properties, had been made with the present donative intent to make a completed, irrevocable, *inter vivos* gift to the JCP Trust, even if legal title was to be delivered to and held by O'Dovero Properties on *behalf* of the JCP Trust. Viewing all of the evidence as a whole, we perceive no basis for disturbing the probate court's finding in that regard.

The probate court's finding was strongly supported by the evidence. The language in the JCP Trust expressly indicated that its purpose was to receive gifts from PEO and Lois for the benefit of their family. There was evidence of quitclaim deeds conveying the disputed properties to O'Dovero Properties. Trial testimony supported a finding that the properties were deeded to O'Dovero Properties on behalf of the benefit of the trust. For example, Lois testified that she believed a 1992 quitclaim deed, executed by PEO and Lois and conveying 68 parcels of real

_____

[10] For purposes of the instant analysis, the disputed properties are those that the probate court found to have been gifted to the JCP Trust: Econofoods, Sears, MI Works, Secretary of State, GKC MQT, Ridge Street Suites, MRS, Spears, and 230 Rublein.

property to O'Dovero Properties, "fulfill[ed] her intent in the JCP trust" by transferring the properties to the JCP trust. Lois also testified that she and PEO had discussed the effect of that quitclaim deed.

The language of the O'Dovero Properties partnership agreement and its amendments also support the probate court's findings. As stated in the partnership agreement:

> The *sole* purpose and business of the partnership shall be to register and hold in the firm name and otherwise deal with, such property *and only such property* of the nature described in Article II of this Agreement as the partnership may be requested so to do by the trustee or trustees of the PETER E. and LOIS A. O'DOVERO Trust Agreement, acting in a fiduciary capacity, *and/or the trustees of the JCP Trust dated September 19, 1992, acting in a fiduciary capacity.* [Emphasis added.]

Article II of the partnership agreement explicitly states that real estate property "intended to be covered by the terms" of the partnership agreement was, in relevant part, "*limited to property in which the trustee or trustees of the PETER E. and LOIS A. O'DOVERO Trust Agreement or the JCP Trust Agreement has an interest in a fiduciary capacity, and shall not include any property owned by the trustees in their individual capacity*" (emphasis added). Vicary, the drafter of the JCP Trust and partnership agreement that formed O'Dovero Properties, also testified that O'Dovero Properties was established to act as a "nominee" title holder for properties that were beneficially owned by the JCP Trust or the revocable grantor trusts associated with PEO and Lois. Vicary explained that, as a nominee, the partnership was intended to hold only legal title—not any beneficial interest—in trust assets.

The pertinent tax returns (including PEO's and Lois's gift-tax returns) listed the properties at issue. PEO testified that he intentionally included the properties listed on his gift tax returns and that he intended to gift those properties to the JCP Trust. The trial testimony in addition to the gift tax returns themselves strongly supported the probate court's finding. See *In re Rudell Estate*, 286 Mich App at 405 (concluding that "the presence of a filed gift tax return" is not *conclusive* evidence that a gift was made, however such a return may serve as evidence "tend[ing] to show that a gift has been made . . . .") (emphasis added). Additionally, in his discovery responses, PEO created a document that identified the properties and the beneficial owners of the properties, which included the JCP Trust ownership of some of the disputed properties.

For these reasons, we find no error in the probate court's determination that Lois and PEO made completed *inter vivos* gifts of the nine disputed properties at issue here to the JCP Trust by transferring legal title for those properties to O'Dovero Properties as a nominee title holder. See *Love*, 63 Mich at 190. And given the undisputed value of the properties in question (in land, improvements, or rental value), we find no error in the probate court's determination that acceptance of the properties in question was properly presumed. See *Osius*, 375 Mich at 611; *Defreese v Lake*, 109 Mich at 421-427.

## D. FACTUAL FINDINGS REGARDING PROPERTIES

Appellants also raise several arguments challenging specific factual findings announced by the probate court regarding certain properties. We find no basis for disturbing any of the challenged findings.

As an initial matter, appellants' argument that the probate court afforded undue weight to Lois's testimony and admissions that PEO made in discovery responses about the beneficial ownership of the disputed properties, while affording inadequate weight and "deference" to other evidence, lacks merit. It is the sole prerogative of the fact-finder to determine how much weight to afford a given piece of evidence, *Mitchell v Kalamazoo Anesthesiology, PC*, 321 Mich App 144, 156; 908 NW2d 319 (2017) ("the weight or reliability (if any) given to the evidence . . . is reserved solely to the fact-finder"), and "[w]e defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court," *Lewis Estate*, 329 Mich App at 93 (emphasis added).

### 1. 290 RUBLEIN

First, appellants argue that the probate court clearly erred by identifying "290 Rublein"— also known as the "MRS" property—as one of the properties that PEO and Lois had gifted to the JCP Trust. Specifically, appellants cite evidence that militated against the probate court's finding, including PEO's testimony, checks that he presented at trial showing that he had paid for the property, a lease for the property signed by PEO, an appraisal indicating that he and Lois own the property, and assorted other documentary evidence. But appellants ignore the evidence cited by the probate court in support of its conclusion that 290 Rublein had, in fact, been gifted to the JCP Trust by PEO and Lois, including the 1992 quitclaim deed conveying the property to O'Dovero Properties, JCP Trust tax returns listing the property as an asset, correspondence from Gayla Salani, PEO's bookkeeper, indicating that the property had been gifted to the JCP Trust, Salani's trial testimony and pretrial correspondence from PEO indicating that the rental income associated with the property was paid to the JCP Trust, and documentation indicating that the trust had paid for work performed on the property. Given the existence of conflicting evidence concerning the beneficial ownership of 290 Rublein, and in light of the probate court's superior ability to assess the credibility of witnesses at trial, *Lewis Estate*, 329 Mich App at 93, we are not definitely and firmly convinced that the court made a mistake by finding that the JCP Trust held beneficial ownership of the property's buildings, rents, and land.

### 2. MICHIGAMME PROPERTY

Second, appellants argue that the probate court clearly erred by finding that the JCP Trust was entitled to 1,450 acres of the 2,900-acre Michigamme property, i.e., half of the acreage. In support, appellants argue either that "no evidence" supported the probate court's finding or that the probate court should not have credited the evidence that it cited in support of its ruling and should instead have credited appellants' evidence. In particular, appellants argue that the probate court should have credited Salani's testimony that certain accounting records, which indicated that PEO had borrowed approximately $1 million from the JCP Trust to buy his half of the Michigamme property, had been incorrectly "booked." In other words, appellants contend that the

probate court should have credited Salani's testimony, not the disputed accounting records. Again, however, given the existence of conflicting evidence, and in light of the probate court's superior ability to judge the credibility of the witnesses, we see no basis for disturbing the probate court's finding. See *id*.

### 3. SOB PROPERTY

Third, appellants raise a claim of clear error regarding the SOB property, which the probate court found to have been purchased using JCP Trust funds, although title was conveyed to O'Dovero Properties. In essence, appellants argue that the probate court clearly erred by finding that equitable title to the SOB property belonged to the JCP Trust because legal title to that property was held by O'Dovero Properties, and there was nothing to prevent PEO, as a partner, from unilaterally "conveying beneficial interest" for a given property from one of the entities for whom O'Dovero Properties held title to another of those entities. However, for the reasons set forth in Part III(B) of this opinion, the probate court was correct in holding that, as amended, the O'Dovero Properties partnership agreement did not afford PEO the right to acquire new beneficial interests for himself or his revocable grantor trust merely by virtue of his status as a partner. Thus, we find no clear error in the probate court's disputed finding with regard to the SOB property.

### 4. HUMBOLDT PROPERTIES

Fourth, appellants contend that the probate court clearly erred by finding that the JCP Trust had purchased PEO's interest in the 15 parcels referred to as the "Humboldt Properties" for approximately $1.5 million. In support, appellants argue that the probate court should have credited their evidence suggesting that PEO and his agents made a unilateral mistake of fact in deciding to sell the property, that they sold it for far less than its reasonable market value, and that PEO remains a cosigner on the mortgage associated with the property despite the sale. However, even assuming that all of those things are true, appellants fail to explain how that undermines the probate court's disputed factual finding that PEO *did* sell the property to the JCP Trust for approximately $1.5 million. Thus, we perceive no clear error in that finding.

### 5. NEW FISH & WILDLIFE PROPERTY

Appellants next argue that the probate court clearly erred by finding that the JCP Trust held beneficial ownership of the building and rents associated with the New Fish & Wildlife property. Once again, appellants argue that the probate court should have credited their proofs, which indicate that PEO paid for the construction of the building on this property, while discounting the trustees' proofs and the evidence cited in the court's opinion, which indicates that the JCP Trust paid to construct that building. Appellants' mere disagreement with the probate court's credibility determinations and decisions concerning the weight afforded to the evidence does not constitute a basis for finding clear error. See *Lewis Estate*, 329 Mich App at 93.

### 6. OTHER PROPERTIES

Next, appellants argue that the probate court erred with regard to the Peak Fitness and Karr Medical properties because "the court [did] not consider the owner of the land and completely disregards PEO's ownership in the land . . . which seems prejudicial," and the probate court did not offer a conclusion about "land division splits." Appellants' arguments, which lack any citation

to record evidence undermining the probate court's findings concerning the two properties, do not state any cognizable claim of error. Although appellants criticize the probate court's findings regarding the named properties, they fail to explain how or why those findings are *clearly erroneous*. Therefore, appellants have abandoned their arguments concerning the Peak Fitness and Karr Medical properties. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow.").

Finally, appellants argue that the probate court committed clear error with regard to the "1007 Ridge Street," "GKC Marinette," and "Woodruff" properties. However, the probate court did not *announce* any factual findings or rulings concerning those properties, and the trustees did not dispute title to them at trial. Therefore, appellants' assertions have no merit.

E. TITLE TO THE DISPUTED PROPERTIES AND CONSTRUCTIVE TRUST

Appellants argue that the probate court erred by quieting title to the disputed properties in the JCP Trust, contrary to the common-law principles that govern such actions, and also contrary to MCL 600.2932(1) and MCR 3.411. Although the probate court's analysis concerning subject-matter jurisdiction noted that the trustees had *asserted* a claim to quiet title to the disputed properties, the probate court's opinion and order following trial never actually stated that it was *quieting title* to those properties in the JCP Trust. Rather, the probate court held that the JCP Trust was entitled to a constructive trust over the disputed properties (or certain interests in them) as the "beneficial owner[]" of those awarded properties or interests. It is well-settled that "a court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009). Nevertheless, appellants contend that the probate court must have quieted title in the JCP Trust, and could not merely have granted it a constructive trust, because there is no independent cause of action for a constructive trust in this context. We disagree.

MCL 600.2932 governs quiet-title actions, and provides, in pertinent part:

(1) Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

* * *

(5) Actions under this section are equitable in nature.

-23-

In support of their argument, appellants rely on persuasive federal decisions[11] and *Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Ass'n*, 305 Mich App 301, 325; 852 NW2d 229 (2014) (*CPAN*), vacated in part on other grounds 498 Mich 896 (2015) ("A constructive trust is not an independent cause of action; rather, it is an equitable remedy."). However, *CPAN* is both legally and factually distinguishable. Unlike the instant case, *CPAN* was a nonprobate action that did not involve either a trust or any other alleged fiduciary relationship. See *id*. at 324-326.

In the probate context, EPIC specifically empowers probate courts to issue constructive trusts under certain circumstances. MCL 700.7901(2)(i) provides that a probate court may "impose a lien or a constructive trust on trust property," subject to certain limitations, in order to "remedy a breach of trust that has occurred or may occur." MCL 700.1308(1)(*i*) also empowers the probate court to impose "a lien or a constructive trust on property," again subject to certain limitations, in order to "remedy a breach of [fiduciary] duty that has occurred or may occur . . . ." Additionally, in the fiduciary context, Michigan's jurisprudence has long recognized that constructive trusts are appropriate to remedy breaches of fiduciary duty. See, e.g., *Potter v Lindsay*, 337 Mich 404, 411-412; 60 NW2d 133 (1953). Therefore, we are unpersuaded by appellants' argument that the probate court's grant of a constructive trust was necessarily a remedy associated with a quiet-title determination.

Appellants also argue that the probate court erred by imposing a constructive trust, asserting that there was no evidence to support the court's decision. We disagree.

The imposition of a constructive trust is an equitable remedy, *Kammer Asphalt Paving Co, Inc v E China Twp Sch*, 443 Mich 176, 188; 504 NW2d 635 (1993); *Kent v Klein*, 352 Mich 652, 656-658; 91 NW2d 11 (1958), implemented "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest[.]" *Kent*, 352 Mich at 656. A constructive trust can arise when property has been "obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, *or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property . . . ." Potter*, 337 Mich at 411 (quotation marks and citation omitted; emphasis added). Additionally, "a constructive trust may be established by parol evidence," *Kren*, 338 Mich at 295 (quotation marks and citation omitted), and such evidence "is admissible to establish a trust, even against a deed absolute on its face, if it would be a fraud to set up the form of the deed as conclusive," *id.* at 296 (quotation marks and citations omitted).

"A constructive trust is imposed not because of the intention of the parties but because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." *Potter*, 337 Mich at 412 (quotation marks and citation omitted). Hence:

---

[11] Decisions rendered by lower federal courts are not binding precedent; however, they may be considered persuasive authority. *Caron v Cranbrook Ed Community*, 298 Mich App 629, 638 n 3; 828 NW2d 99 (2012).

If one takes a title in his own name, *whilst acting as agent, trustee, or guardian, or in any other fiduciary capacity*, a court of equity will subject the lands to proper trusts in his hands, or compel him to transfer the title to the party equitably entitled to it. Nor does it matter whether the party takes the title in his own name in good faith, under the belief that he can thereby better manage the property to the advantage of those for whom he is acting, or in compliance with their wishes, or whether from an intention to defraud them of their rights therein. In either case a court of equity will control the legal title so as to protect the just rights of the true owner. [*Id.*, quoting *Sanford v Sanford*, 139 US 642, 646; 11 S Ct 666; 35 L Ed 290 (1891) (alteration omitted; emphasis added).]

Regarding fiduciary relationships, our Supreme Court has recognized:

Wherever one person is placed in such a relation to another, by the act or consent of that other, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject or property or business, (he is in such a fiduciary relation with him that) he is prohibited from acquiring rights in that subject antagonistic to the person with whose interests he has become associated. [*Parks v Brooks*, 188 Mich 645, 658; 155 NW 450 (1915) (quotation marks and citation omitted)].

Article III of the original O'Dovero Properties partnership agreement clearly indicates that the property held by that partnership for the JCP trust was held in a "fiduciary capacity." In addition, appellants admit that O'Dovero Properties held legal title to the disputed properties as a nominee[12] for several entities, including the JCP Trust. Therefore, the partners of O'Dovero Properties stood in a fiduciary relationship to the JCP Trust and its beneficiaries. Moreover, as a partner in O'Dovero Properties, PEO owed fiduciary duties to the other partners, James and Joseph, notwithstanding the amendments to the partnership agreement that authorized PEO to act unilaterally. See *Urbain v Beierling*, 301 Mich App 114, 125; 835 NW2d 455 (2013) (recognizing that partners in a partnership have a fiduciary relationship, which imposes the obligation of "the utmost good faith and integrity in their dealings with one another in partnership affairs.") (quotation marks and citations omitted).

The probate court found that PEO had used his position as a partner to convey properties held by O'Dovero Properties, as a nominee, to his own revocable grantor trust, including properties that he had previously gifted to the JCP Trust or in which that trust held a beneficial interest. The evidence supports the probate court's findings, and we are not definitely and firmly convinced that a mistake has been made. See *Lewis Estate*, 329 Mich App at 93. The record reveals that PEO acknowledged that he refused to cede control over the disputed properties, continued to manage them and receive rents associated with them, and attempted to convey some of the disputed properties to himself or his *revocable* grantor trust. Moreover, when questioned concerning his ultimate goal in this litigation, PEO indicated that he wanted to "fix" the JCP Trust, to "get rid of

---

[12] In this context, *Black's Law Dictionary* (11th ed), defines the term "nominee," in relevant part, as "[a] party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others."

some of" the trustees, and to regain control over deciding to whom his assets would be disbursed. Further, by the time of trial, the JCP Trust's monthly stream of rental income had decreased by approximately 75%.

We see no basis for disturbing the probate court's findings. Deferring to those findings, it is clear that PEO's actions violated his fiduciary duties to his O'Dovero Properties partners, the JCP Trust, and its beneficiaries (which included PEO's partners, James and Joseph). See generally *Prentis Family Foundation, Inc v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 49; 698 NW2d 900 (2005) (discussing the fiduciary duties of loyalty, good faith, and fair dealing, and observing that "[a] fiduciary . . . is not permitted to act for himself at his principal's expense during the course of his agency.") (Quotation marks and citations omitted). Given that PEO violated his fiduciary duties by obtaining or attempting to obtain legal title to the disputed properties, contrary to the JCP Trust and partnership agreement, we conclude that it was appropriate for the probate court to impose the constructive trust to prevent PEO from being unjustly enriched. See *Potter*, 337 Mich at 411-412.

## F. TERMINATION OF TRUST

Appellants also contend that the probate court erred by failing to terminate the JCP Trust for lack of purpose under MCL 700.7410(1) or MCL 700.7412(2).[13] Appellants argue that the JCP Trust should have been terminated or modified under either of these provisions because (1) "it is clear that a gift can never take place because of the retained control by" PEO, and (2) the JCP Trust's intended tax purposes are now impossible (or effectively impossible) to achieve through the trust. We disagree.

The probate court correctly concluded that respondents had failed to demonstrate that termination of the trust was necessary under MCL 700.7410 and MCL 700.7412. In pertinent part, MCL 700.7410(1) provides:

In addition to the methods of termination prescribed by sections 7411 to 7414, a trust terminates to the extent the trust is revoked or expires pursuant to its terms, *no purpose of the trust remains to be achieved, or the purposes of the trust have become impossible to achieve* or are found by a court to be unlawful or contrary to public policy. [Emphasis added.]

On the other hand, MCL 700.7412(2) provides, "The court *may* modify the administrative or dispositive terms of a trust or terminate the trust if, *because of circumstances not anticipated by*

---

[13] Appellants also appear to assert that modification of the Trust was warranted under MCL 700.7416. However, appellant failed to advance this argument any further in their brief on appeal. We also note that appellants failed to support this same assertion below. A party abandons an issue on appeal by failing to address the merits of his or her assertions. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 626-627; 750 NW2d 228 (2008). Therefore, we deem this issue abandoned.

-26-

*the settlor*, modification or termination *will further the settlor's stated purpose* or, if there is no stated purpose, the settlor's probable intention." (Emphasis added.)

It is undisputed that the JCP Trust is, and was intended to be, an irrevocable trust. The JCP Trust expressly states that its "principal purpose . . . is to receive gifts from the Grantors for the benefit of the Grantors' family as . . . provided" in the trust agreement, and includes an acknowledgment by the grantors that the JCP Trust was "not subject to alteration, amendment or revocation by the Grantors." Both PEO and Lois also testified that they intended that the JCP Trust be for the benefit of their children. PEO also testified that the trust was established to avoid tax liability.

Appellants assert that whether or not the JCP Trust is irrevocable is irrelevant because the amended partnership agreement gave PEO the "sole control" to determine where the beneficial interest of the "partnership property" was to be allocated, which "frustrate[d] the purpose of the trust[.]" In support of this argument, appellants reiterate that the JCP Trust could not receive gifts. For reasons explained in Parts III (B) and (C) of this opinion, those arguments have no merit. Additionally, in the Third Amended Petition to Terminate the Trust, PEO admitted that the JCP trust owned multiple properties, consistent with the trust's stated purpose. Further, the testimony of Gregory and Sharp, both expert witnesses, supported the finding that, although difficult given the circumstances, the purpose of the trust remained possible to achieve. Therefore, appellant's assertion that the stated purpose of the JCP Trust was frustrated or impossible to achieve, warranting termination under MCL 700.7410(1), has no merit.

Regarding termination under MCL 700.7412(2), appellants argued that the trust should have been terminated because the trust's tax purposes are impossible to achieve. Avoiding tax liability was not a stated purpose of the trust. However, there was evidence indicating that the JCP Trust was also intended as a means of avoiding unnecessary gift- and estate-tax liability. Although Gregory and Sharp voiced concern that the JCP Trust might be vulnerable to "attack by the IRS," both acknowledged that, at the time of trial, it was impossible to know whether there would in fact be any estate tax on the JCP Trust properties. The probate court was not persuaded that the alleged future tax ramifications of PEO's estate required termination of the JCP Trust. As already discussed, we defer to the probate court on matters of credibility and the weight or reliability given to the evidence by the finder of fact. See *Lewis Estate*, 329 Mich App at 93. Additionally, we perceive no error in the probate court's determination that terminating the JCP trust would not further the *stated* purpose of the JCP Trust.

We conclude that the probate court did not clearly err in its findings of fact or abuse its discretion by denying Appellants' petition to terminate the JCP Trust under MCL 700.7410 and MCL 700.7412.

### IV. DUE PROCESS

Appellants argue they were denied due process during the bench trial because the probate court did not act impartially and failed to apply MCR 3.411(F).[14] Appellants cursorily argue that

---

[14] We note that the record does not indicate that appellants ever filed a claim under MCR 3.411(F).

they were denied due process as a result of the probate court's conclusion and order "regarding the determination of rights in the real property," and appear to take issue with the probate court's credibility determinations and weighing of the evidence. "A trial judge is presumed to be impartial and the party who asserts partiality has a heavy burden of overcoming that presumption." *In re MKK*, 286 Mich App 546, 566; 781 NW2d 132 (2009). As already discussed, we defer to the probate court on matters of credibility and the weight or reliability given to the evidence by the finder of fact. See *Lewis Estate*, 329 Mich App at 93; *Mitchell*, 321 Mich App at 156. Nonetheless, appellants failed to adequately brief argument. Therefore, we deem the issue abandoned. See *MOSES Inc v Southeast Mich Council of Gov'ts*, 270 Mich App 401, 417; 716 NW2d 278 (2006). ("If a party fails to adequately brief a position, or support a claim with authority, it is abandoned."). Moreover, because appellants first raised these claims in their motion for reconsideration, these arguments are unpreserved, *George v Allstate Ins Co*, 329 Mich App 448, 454; 942 NW2d 628 (2019); see *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (holding that as a general rule, "a failure to timely raise an issue waives review of that issue on appeal.") (quotation marks and citation omitted), and we decline to exercise our discretion to address them on appeal, see *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006).

## V. POSTJUDGMENT PROCEEDINGS

### A. MOTION FOR RECONSIDERATION

Appellant's also cursorily argue that the trial court abused its discretion by denying their posttrial motion for reconsideration. However, appellants have abandoned this issue by failing to adequately brief it. See *Mitcham*, 355 Mich at 203 ("It is not enough for an appellant in his brief simply to announce a position or assert an error . . . ."); *MOSES Inc*, 270 Mich App at 417 ("If a party fails to adequately brief a position, or support a claim with authority, it is abandoned.").

### B. JURISDICTION OF APPELLATE COURT IN DOCKET NOS. 354065 & 353970

Appellees assert that this Court lacks jurisdiction over appellants' claims of appeal in Docket Nos. 354065 and 353970. First, appellees argue that the probate court's June 8, 2020 order denying appellants an automatic stay of the probate court's judgment pending the appeals in Docket Nos. 352366 and 352367 was not a final order appealable as of right under MCR 7.203(A)(2). Next, appellees argue that we lack subject-matter jurisdiction because the claims of appeal in Docket Nos. 353970 and 354065 involve events that occurred after appellants filed their initial claims of appeal in Docket Nos. 352366 and 352367. Finally, appellees complain that appellants "never sought a stay in this Court under MCR 7.209 at the appropriate time—after a denial of a stay in the lower court, which would be the proper procedural step to present such a request to this Court." On the other hand, appellants assert that this Court has jurisdiction over the claims of appeal in under MCR 7.203(A)(1). We conclude that this Court lacks jurisdiction over appellants' claims of appeal in Docket Nos. 354065 and 353970 because the June 8, 2020 order was not a final order appealable as of right.

"Whether this Court has jurisdiction to hear an appeal is an issue that we review de novo." *Rains v Rains*, 301 Mich App 313, 320; 836 NW2d 709 (2013) (quotation marks and citation omitted).

The parties' jurisdictional arguments largely focus on MCR subchapter 7.200—in particular, MCR 7.203(A)(1), which governs this Court's jurisdiction over "an appeal of right filed by an aggrieved party from" a "final judgment or final order of the *circuit court, or court of claims*, as defined in MCR 7.202(6) . . . ." However, MCR 5.801 generally governs this Court's jurisdiction over appeals, such as this one, arising out of *probate* court. In probate court, "[t]here are two forms of action, a 'proceeding' and a 'civil action.' " MCR 5.101(A). "A proceeding is commenced by filing an application or a petition with the court." MCR 5.101(B). On the other hand, under MCR 5.101(C)(1), "*[a]ny action* against another *filed by a fiduciary or trustee* . . . must be titled civil actions and commenced by filing a complaint and are governed by the rules applicable to civil actions in circuit court[.]" (Emphasis added.) The distinction between probate "proceedings" and "civil actions" is meaningful here because the ability to appeal a given order may depend on the type of probate matter in which the order was entered. In pertinent part, MCR 5.801 provides:

> (A) Appeal of Right. A party or an interested person aggrieved by a final order of the probate court may appeal as a matter of right as provided by this rule.
>
> Orders appealable of right to the Court of Appeals are defined as *and limited to* the following:
>
> (1) a final order, as defined in MCR 7.202(6)(a), affecting the rights or interests of a party to *a civil action* commenced in the probate court under MCR 5.101(C);
>
> (2) a final order affecting the rights or interests of an interested person in a *proceeding* involving a decedent estate, the estate of a person who has disappeared or is missing, a conservatorship or other protective proceeding, the estate of an individual with developmental disabilities, *or an inter vivos trust*[15] or a trust created under a will. *These are defined as and limited to orders resolving the following matters*:

* * *

---

[15] An "*inter vivos* trust" is "created by an instrument which becomes operative during the settlor's lifetime as contrasted with a testamentary trust which takes effect on the death of the settlor." *In re Messer Trust*, 457 Mich 371, 374 n 2; 579 NW2d 73 (1998) (quotation marks and citation omitted).

(c) determining the validity of a governing instrument as defined in MCL 700.1104(m)[16];

(d) interpreting or construing a governing instrument as defined in MCL 700.1104(m);

* * *

(f) reforming, terminating, or modifying or denying the reformation, termination or modification of a trust;

* * *

(o) determining title to or rights or interests in property;

* * *

(v) determining or denying a constructive trust;

* * *

(5) an order entered in a probate *proceeding*, other than a civil action commenced in a probate court, that otherwise affects *with finality* the rights or interests of a party or an interested person in the subject matter; or

(6) other appeals as provided by law.

(B) Appeal by Leave. *All orders of the probate court not listed in subrule (A) are appealable to the Court of Appeals by leave of that court*. [Emphasis added.]

The June 8, 2020 order appealed by appellants in Docket Nos. 354065 and 353970 does not appear to qualify as an order appealable by right under MCR 5.801(A). In the June 8, 2020 order, the probate court (1) concluded that the October 14, 2019 order was not subject to an automatic stay under MCR 5.802 and MCL 600.867; (2) refused to rule on whether a nonautomatic stay was warranted because no motion to that effect had been filed; (3) refused to rule "on any contempt motion until [one was] properly noticed and argued before the Court"; and (4) held that PEO's previously filed bond on appeal would be "released to him" because bond was "not appropriate in this case[.]" The June 8, 2020 order was not designated as final, and it was clearly not *intended* as a final order, given that the probate court indicated that it would rule on additional motions if the parties subsequently filed them. Therefore, as to the civil action, the June 8, 2020 the order was not a "final" order appealable as of right under MCR 5.801(A)(1), i.e., "a final order,

---

16 Among other things, MCL 700.1104(m)'s definition of "governing instrument" includes a "trust[.]"

as defined in MCR 7.202(6)(a), affecting the rights or interests of a party to a civil action commenced in the probate court under MCR 5.101(C)[.]"

Similarly, as to the probate proceeding, the order was also not appealable as of right under any of the relevant subparts of MCR 5.801(A)(2) or MCR 5.801(A)(5). The order was not a "final order" under MCR 7.202(6)(a). Nor, under MCR 5.801(A)(5), did the order "affect[] *with finality* the rights or interests of a party or an interested person in the subject matter[.]" (emphasis added.) The probate court explicitly noted that it would entertain a subsequent motion for stay pending appeal if appellants filed one. Finally, appellants identify no caselaw, court rule, or statute providing them an appeal as of right under MCR 5.801(A)(6) ("other appeals as provided by law").

Although we conclude that this Court lacks jurisdiction over appellants' claims of appeal in Docket Nos. 354065 and 353970 because the June 8, 2020 order was not a final order appealable as of right, in the interest of judicial economy, we treat those claims of appeal as granted leave applications under MCR 5.801(B) and consider the merits of appellants' claims. See *Rains*, 301 Mich App at 320 n 2. Nonetheless, as discussed below, we conclude that these claims are now moot.

C. STAY AND BOND

Appellants argue that the probate court erred by concluding that appellants were not entitled to an automatic stay, pending appeal, under MCL 600.867(1) and MCR 5.802, and that the court further erred by holding that it was not appropriate for appellants to post bond pending appeal. Appellees argue that "by raising a request for a stay pending appeal as a separate appeal"—rather than filing a motion to stay in this Court—appellants have ensured that the instant issue is moot. Nonetheless, appellees also assert that appellants' claim of error is meritless. We conclude that the question of whether the probate court abused its discretion or erred by ruling as it did regarding appellants' requested stay pending appeal and PEO's posted bond is now moot by the conclusion of these appeals.

This Court reviews de novo questions regarding the proper interpretation and application of both statutes, *Lewis Estate*, 329 Mich App at 93, and court rules, *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011). "[W]hether an issue is moot" is also reviewed de novo. *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016). A trial court's decision regarding the requirement of a security bond is reviewed for an abuse of discretion. *In re Surety Bond for Costs*, 226 Mich App 321, 331; 573 NW2d 300 (1997). "A trial court abuses its discretion when it chooses an outcome falling outside the range of reasonable and principled outcomes, or when it makes an error of law." *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 320; 900 NW2d 680 (2017) (quotation marks and citations omitted).

"This Court does not decide moot issues. A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy," *Garrett*, 314 Mich App at 449 (quotation marks and citation omitted), or "when a subsequent event renders it impossible for the appellate court to fashion a remedy," *id*. at 450 (quotation marks and citation omitted). Even assuming, arguendo, that the probate court *did* err by failing to grant appellants an automatic stay pending appeal, and that it abused its discretion by holding that the filing of a bond pending appeal was unwarranted in this case, it would not be possible for this Court to fashion a remedy for those

-31-

alleged errors given the adjudication of these consolidated appeals by this Court. Therefore, a decision on appellants' instant claims of error would have no practical legal effect in this case, and we refuse to address the matter on that basis. See *id.* at 449.

### D. PETITION AND POSTTRIAL DISCOVERY

Appellants argue that the probate court erred when it concluded that appellants had either abandoned or waived their petition to remove the trustees for breach of fiduciary duties. Appellants also assert that the probate court abused its discretion by failing to rule on the petition, contrary to MCR 2.505(A)(3), and by quashing the third-party subpoenas. We disagree.

### 1. STANDARD OF REVIEW

"[W]e generally review the grant or denial of a discovery motion for an abuse of discretion, reviewing questions regarding the interpretation of the related court rules de novo." *Planet Bingo, LLC*, 319 Mich App at 320 (quotation marks and citation omitted). "A trial court abuses its discretion when it chooses an outcome falling outside the range of reasonable and principled outcomes, or when it makes an error of law." *Id.* (quotation marks and citation omitted).

### 2. STANDING

As an initial matter, appellees argue that appellants lack standing on appeal to challenge the probate court's ruling (or lack thereof) concerning the petition to remove the trustees for breach of fiduciary duties because appellants do not qualify as "aggrieved" parties. We disagree.

As explained in *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292; 715 NW2d 846 (2006):

> [T]o have standing on appeal, a litigant must have suffered a concrete and particularized injury, as would a party plaintiff initially invoking the court's power. The only difference is a litigant on appeal must demonstrate an injury arising from either the actions of the trial court or the appellate court judgment rather than an injury arising from the underlying facts of the case.

The petition in question was filed by appellants PJO and Jean—two of PEO's and Lois's children—and thus PJO and Jean *are* beneficiaries of the JCP Trust. Additionally, as the parties who filed the petition to remove the trustees, PJO and Jean qualify as parties "aggrieved" by the probate court's failure to rule on that petition and its decision to quash nonparty subpoenas related to the petition. Even assuming, arguendo, that appellant PEO lacks appellate standing to challenge the probate court's decision regarding the petition to remove the trustees, because appellants PJO and Jean are beneficiaries of the JCP Trust, they have standing to raise the issues now on appeal in Docket Nos. 356467 and 356469.

### 3. ANALYSIS

Appellants argue that the probate court either erred or abused its discretion by quashing the disputed nonparty subpoenas, based on the probate court's determination that appellants had either

abandoned or waived the petition to remove the trustees by failing to raise or request a ruling on that petition at trial, in their proposed findings of fact and conclusions of law following trial, or in any motion filed before appellants claimed their appeals as of right in Docket Nos. 352366 and 352367. We disagree.

Appellants raised this issue in their motion to enforce their posttrial nonparty subpoenas, arguing that the petition to remove the trustees remained pending before the probate court, and thus further discovery—including the disputed nonparty subpoenas—should be permitted). After considering the matter, the probate court disagreed and quashed the nonparty subpoenas as improper. PJO and Jean moved for reconsideration, arguing that the court erred by quashing the subpoenas because the petition was never adjudicated, which the probate court denied. In making its decision, the probate court relied, in part, on the July 5, 2018 stipulated order, which consolidated the cases. The court further noted that its October 14, 2019 order provided: "This is an order adjudicating all claims in the consolidated actions of case number 17-337181-CZ and 17-337180-TV. The parties agree to consolidation, and an order was entered on July 5, 2018, consolidating the matters consistent with MCR 2.505(A)."

Appellants allege that, during the June 4, 2018 status conference, the parties orally agreed to bifurcate the trial on the petition to remove the trustees from the trial on the trustees' claims and petitions regarding title to the disputed properties. In particular, appellants argue that the parties agreed to try the property claims first, then hold a subsequent trial with regard to the petition to remove the trustees. However, appellants cite no order or written stipulation memorializing that alleged agreement. In July 2018, a stipulated order was entered stating that the civil action and probate proceeding—which included the petition to remove the trustees—were being "consolidated for purposes of all further proceedings, including trial." There is nothing in the record indicating that appellants ever filed any motion to bifurcate trial. Nor did appellants request a ruling on the petition to remove the trustees in their findings of fact and conclusions of law following trial. Indeed, although the probate court's opinion and order following trial expressly stated that it was "an order adjudicating *all* claims in the consolidated actions" at bar here, appellants did not request a ruling on the petition to remove the trustees in their posttrial motion for reconsideration, relief from judgment, or a new trial, nor did they do so at the related hearing on that motion. Rather, appellants first raised this issue in the probate court after they had claimed appeals, in Docket Nos. 352366 and 352367, from the probate court's "final" opinion and order following trial.

The probate court did not err when it concluded that further discovery regarding the petition to remove the trustees was impermissible. This issue involves a petition in probate court, which was necessarily part of the probate "proceeding," not the civil action. See MCR 5.101. MCR 5.131(B)(3) addresses the scope of discovery in probate proceedings, and provides that "[d]iscovery in a probate proceeding is limited to matters raised in any petitions or objections *pending* before the court." (Emphasis added.) The petition to remove the trustees was no longer "pending" before the probate court when appellants issued the disputed nonparty subpoenas. Appellants agreed to consolidate the probate proceeding and civil action for all purposes, including trial; they had proceeded to trial; the probate court had issued its final order following trial, which stated that the court adjudicated *all* claims in these consolidated cases, and; appellants had claimed appeals from those final orders. After appellants claimed those appeals, the probate court had no further authority to "set aside or amend the judgment or order appealed . . . ." See

-33-

MCR 7.208(A).[17] Therefore, the probate court did not err or abuse its discretion by quashing the disputed subpoenas.

Moreover, given the absence of any request by appellants for a ruling on the petition from the probate court, we find no error warranting reversal regarding the court's alleged failure to rule on the petition. "Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute." *Walters*, 481 Mich at 388. In this instance, appellants failed to include any conclusions of law concerning the petition to remove the trustees in their proposed findings and conclusions following trial. In other words, appellants contributed to the probate court's alleged error in failing to adjudicate the petition to remove the trustees, and appellants may not capitalize on that purported error as a ground for reversal. See *Lewis v LeGrow*, 258 Mich App 175, 210; 670 NW2d 675 (2003) ("It is settled that error requiring reversal may only be predicated on the trial court's actions and not upon alleged error to which the aggrieved party contributed by plan or negligence.").

Affirmed.

/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michelle M. Rick

---

[17] In pertinent part, MCR 7.208(A) provides:

> Limitations. After a claim of appeal is filed or leave to appeal is granted, the trial court or tribunal may not set aside or amend the judgment or order appealed from except
>
> (1) by order of the Court of Appeals,
>
> (2) by stipulation of the parties,
>
> (3) after a decision on the merits in an action in which a preliminary injunction was granted, or
>
> (4) as otherwise provided by law.